(No. 42471.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. HENRY HIGGINS, Appellant.

*Opinion filed January 14, 1972.*

ROBERT S. BAILEY and RONALD P. ALWIN, both of Chicago, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General and ROBERT A. NOVELLE and HENRY A. HAUSER, Assistant State's Attorneys, of counsel,) for the People.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant Henry Higgins was found guilty of murder and armed robbery and sentenced to 30 to 60 years imprisonment. This appeal followed.

On May 8, 1968, between the hours of 1:30 and 2:00 A.M., Mary Halley and her niece, Julia Ridesky, were returning to Mary Halley's home at 4722 South Loomis in Chicago where they were robbed and Mary Halley shot. The offenses were committed by a male Negro who had come from a small white car containing several Negroes. Officer Gary Maynard testified that he and Officer Gerald Corliss were parked in separate police vehicles at approximately 1:30 A.M. when they received a radio call that a robbery was in progress at 4722 Loomis Avenue. As they proceeded toward that address they received another call that shots had been fired and that the suspect's car was a small white car containing black occupants. While driving west on 47th Street, Officer Maynard saw a car with occupants fitting the earlier description turn east onto 47th Street from either Loomis or Adams [sic]. He testified that there was no other traffic in the area at that time. As the suspected vehicle approached and passed by, Officer Maynard made a U-turn, gave chase and saw an object tossed out the right-hand side of the vehicle. He stopped the car and arrested its five occupants including defendant. Officer Corliss arrived, was sent back to search

for the thrown object and found a .32 caliber revolver. Shortly thereafter Mrs. Ridesky was brought to the scene of the arrest and identified defendant as the offender. He and the other occupants of the car, including his sister, Imogene, were taken to the Ninth District Police Station where a search of the five produced six dollars and some change.

When Detective Davis arrived approximately one hour after the arrest, all five suspects were together in the interview room. Officer Davis testified that he told the two males and three females that they were charged with robbery and murder and orally advised defendant and the other individuals of their constitutional rights. Officer Davis also testified there was no questioning of the individuals then but that he did have a conversation with the three females later as they were being processed by the police women, and that they asked how they could "all be charged with killing somebody when nobody identified [them] as doing anything." Officer Davis related to them that they were equally as guilty as the person who committed the crime when they had knowledge of the crime and were with the person when it was committed. Officer Davis further testified that defendant's sister then asked him to talk to the defendant because he had gotten out of the car to go to the bathroom, and might have done something while he was out of the car but she didn't know. The officer told defendant of his sister's statement to which defendant responded, "If I tell the truth would you let the other people go?" Detective Davis answered that he had no authority to release anyone who was arrested and charged and that only the State's Attorney or judge could do so, but that, if defendant told the truth, the State's Attorney would take this into consideration. Defendant said he would do so and after the officer again advised him of his constitutional rights defendant said he understood and then gave an oral statement concerning the robbery. That same morning at 9:30 A.M. defendant gave

a statement to an assistant State's Attorney which was transcribed and which the defendant read and signed.

At the hearing on his motion to suppress both the oral and written statements defendant testified that when he first arrived at the police station he was beaten outside the presence of his friends by two unknown police officers and told to confess; that when Detective Davis initially advised them of their constitutional rights defendant asked someone, unknown to him, for a lawyer; that he continually claimed innocence but after repeated questioning, threats of the electric chair and promises to release his friends, he gave an oral statement to Officer Davis. He further testified that he had informed the assistant State's Attorney of his beating by the police.

All police officers involved denied that the defendant was beaten by them in their presence, or, with the exception of Detective Davis, that they had any conversations with the defendant concerning the release of his friends. The assistant State's Attorney denied that he was told by defendant of the claimed mistreatment.

On this appeal defendant contends the trial court erred in denying the motion to suppress since his statements were the product of psychological coercion and therefore involuntary. He argues that his decision to confess was "impelled by one major consideration, *viz.*, to obtain the release of his sister and three friends;" that having been subtly led to believe by Detective Davis that his confession would accomplish that end, defendant confessed. He also points to his statement to the State's Attorney that he would confess in order not to get the other people involved, and contends that the involuntariness of the confession is clear when one views the totality of circumstances surrounding its giving which include (1) Detective Davis's failure to give full and complete individual *Miranda* warnings to him prior to interrogation, (2) the absence of any positive evidence indicating an intention to waive those rights, (3) his repeated denials of complicity in

the events before the confession was given, (4) the threats, overt and implied, communicated to him and his companions by police officers predicting dire consequences, including electrocution, in the absence of a confession, (5) his youth and inadequacy to cope with police interrogation, (6) the repeated statements by police officers to him, based upon the identification of Mrs. Ridesky, that he had been "fingered", and (7) the failure to take him before a committing magistrate for a period of more than 30 hours following his arrest. We do not agree, since the trial court's finding that the confessions were voluntary and therefore properly admissible against defendant is, in our judgment, not contrary to the manifest weight of the evidence. As the trial judge noted in his findings and as is apparent from a reading of the record of the testimony on the motion to suppress, the version of the facts testified to by defendant and his witnesses is replete with significant inconsistencies. The direct conflict between the facts related by witnesses for the defense and those testified to on behalf of the People was essentially a question of the credibility of the witnesses, best resolvable by the trial judge whose determination will be sustained unless contrary to the manifest weight of the evidence. As we earlier said: "The preliminary inquiry into the voluntary nature of the confession is a question of its competency and is for the trial court. In making its decision the court is not required to be convinced beyond a reasonable doubt. *(People v. Carter, 39 Ill.2d 31, 38; People v. De Simone, 27 Ill.2d 406, 409.)* The finding of the trial court on this question will not be disturbed unless it can be said that it is contrary to the manifest weight of the evidence. *(People v. Nicholls, 42 Ill.2d 91, 101; People v. Daily, 41 Ill.2d 116, 120; People v. Kirk, 36 Ill.2d 292, 295.)" People v. Johnson, 44 Ill.2d 463, 469, 470.*

Nor do we agree that *Lynumn v. Illinois, 372 U.S. 528, 9 L.Ed.2d 922, 83 S.Ct. 917,* is controlling here as defendant urges. In *Lynumn* the elements of coercion were

admittedly present while here they are denied and the dispute resolved against defendant by the trier of fact. There, too, the defendant was an uneducated mother without prior arrest experience, whereas defendant here is a 20-year-old high school graduate who had been twice arrested previously.

Nor does the thirty-hour delay before presenting the defendant to a magistrate render the confession involuntary, for that delay is a circumstance to be taken into consideration in determining the voluntariness of the confession. *(People v. Johnson, 44 Ill.2d 463; People v. Miller, 13 Ill.2d 84.)* Here, where both statements were given within 10 hours of his arrest, and after being advised of his constitutional rights, there is no indication the delay contributed to the confession.

Defendant also argues that his custodial statements should have been suppressed in the absence of a waiver of his *Miranda* rights. While "a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained" *(Miranda v. Arizona, 384 U.S. 436, 475, 16 L.Ed.2d 694, 724, 86 S.Ct. 1602, 1628),* "[a]n express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver." *(Miranda v. Arizona, 384 U.S. 436, 475, 16 L.Ed.2d 694, 724, 86 S.Ct. 1602, 1628.)* Defendant here was advised of those rights by Detective Davis prior to any questioning, and was again warned when he agreed to make a statement. On the latter occasion he replied affirmatively when asked if he understood his rights, and then immediately related what had occurred. His written statement given to the assistant State's Attorney indicates a knowing and intelligent waiver, for he therein acknowledged his understanding after he was advised of each of his constitutional rights individually. He then agreed to make a statement and gave an account of

his actions. An express, formalistic waiver is unnecessary for "[a]ny clear manifestation of a desire to waive is sufficient. The test is the showing of a knowing intent, not the utterance of a shibboleth. The criterion is not solely the language employed but a combination of that articulation and the surrounding facts and circumstances." *(State v. Kremens, 52 N.J. 303, 245 A.2d 313, 317.)* As in the present case, "[o]nce the defendant has been informed of his rights and indicates that he understands those rights, it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows of his rights and chooses not to exercise them." *People v. Johnson, 70 Cal.2d 541, 450 P.2d 865, 876.*

Defendant also contends that his statements should have been suppressed as the "fruits" of his arrest without probable cause or a warrant. *(Wong Sun v. United States, 371 U.S. 471, 9 L.Ed.2d 441, 83 S.Ct. 407.)* However, "[p]robable cause for arrest exists when the facts and circumstances within the arresting officer's knowledge, and of which he had reasonable and trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in believing that an offense has been committed, and that the person arrested is guilty." *(People v. Peak, 29 Ill.2d 343, 348.)* Here the arresting officer, hearing the report that an armed robbery was in progress, approached the vicinity of the crime and saw coming from that vicinity an auto and occupants which matched the reported descriptions. There was no other traffic in this area at this early morning hour. As he gave chase, the police officer saw an object thrown from the suspect's car. Viewing the totality of the facts and circumstances known to the officers at the time of the arrest, it is clear that probable cause existed for them to believe that the defendant and his companions were guilty of the offense. *People v. McCrimmon, 37 Ill.2d 40.*

Defendant also raises a *Wade-Gilbert (United States v. Wade 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926;*

*Gilbert v. California, 388 U.S. 263, 18 L.Ed.2d 1178, 87 S.Ct. 1951)* argument, claiming his statements should have been suppressed as they were the direct result of an illegal confrontation and identification. This contention is predicated upon the absence of a lineup and attorney when the victim, Mrs. Ridesky, was brought to the scene of the arrest and identified the defendant. The record indicates that Mrs. Ridesky ran into her apartment after the assailant fled and called the police, giving a description of the car and occupants. Shortly thereafter a police officer arrived to investigate. After getting a description of the offender, the police officer received a radio call that the suspects had been stopped nearby. He then drove Mrs. Ridesky to the scene of the arrest where the identification took place. We find nothing objectionable in this procedure. *People v. Newell, 48 Ill.2d 382; People v. Young, 46 Ill.2d 82.*

Finally, the defendant contends that the prosecutor's reference in closing argument to the fact that the killing occurred during the course of a six-dollar robbery was inflammatory and prejudicial argument based on evidence not admitted at trial and therefore was reversible error. While the currency recovered from the defendant and his companions was not admitted into evidence at trial because not taken solely from defendant, there was other testimony that defendant took the victim's purse, which contained slightly over six dollars, and that approximately the same amount was found on defendant and his companions after the arrest. Thus, the prosecutor's closing remark was based on a reasonable inference to be drawn from the testimony and did not exceed the bounds of proper argument. *People v. Ostrand, 35 Ill.2d 520; People v. Miller, 13 Ill.2d 84.*

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*