THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM T. REDWINE, Defendant-Appellant.

(No. 56050;

First District (5th Division)—May 3, 1974.

James D. Montgomery and Frederick F. Cohn, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Linda W. Conley, Assistant State's Attorneys, and Nicholas P. Iavarone, Senior Law Student, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was found guilty of murder, armed robbery, and unlawful possession of weapons in violation of sections 9—1, 9—1(a)(2), 9—1(a)(3), 18—2, and 24—1(a)(7) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, pars. 9—1, 9—1(a)(2), 9—1(a)(3), 18—2, and 24—1(a)(7)) and was sentenced to a term of 25 to 80 years. He appeals contending: (1) that the evidence did not prove him guilty beyond a reasonable doubt, (2) that the court's findings were inconsistent, and (3) that he was denied a fair trial when the court improperly shifted the burden of proof to him.

The following evidence was adduced at trial:

*Willis Bulliner testified for the State:*

On June 19, 1970, at about 1:25 or 1:30 A.M., he was watching television at his home on the northwest corner of 74th Street and Union in Chicago when he heard two shots. The first shot was "a real loud blast, like a shotgun, and the other was a sharp report like a small hand pistol." He heard a car door slam and someone running. He went to the window and saw a police squad car facing west on 74th Street parked near the curb next to the house. The light was on in the police car and he saw the officer lying in it. He told his wife to call the police and he went down to the car. There was a large hole in the window on the passenger side of the car. The officer (who had been identified as Officer Kenneth Kaner) lay dead on the seat.

*Chicago Police Officer Edward Brown testified for the State:*

On June 19, 1970, he and his partner, Carl Malek, were heading east on 72nd Street at Halsted in their unmarked car on routine patrol. Malek was driving. At about 1:28 or 1:29 A.M., they saw a two-door 1963 Corvair without license plates and taillight reflectors facing east on 72d Street. They followed the Corvair east on 72d and turned on their oscillating light just as the Corvair turned left onto Union Avenue. The three passengers in the back seat of the Corvair looked back at their car. The Corvair stopped on Union in the middle of the street, midway between 71st and 72d Streets. Malek stopped about three feet behind the Corvair. The driver of the Corvair, Bradley Green, and the passenger in the front seat, William Redwine, exited the car. Redwine immediately put his arms in the air as if someone had said, "Stick them up."

Brown walked toward the front of the stopped car. He observed a "License Applied For" sticker in the name of William Redwine on the

windshield. While walking back, he noticed an open bottle of Miller High Life Beer on the front floor. As he opened the car door to retrieve the beer, one of the three passengers in the back seat moved. Bruce Sharp was seated directly behind the driver's seat with Dwight Cavin in the middle and Jerome Amos next to Cavin. Brown saw the butt of a gun (a .38 caliber Colt) on the floor between Cavin's feet. He quickly grabbed the gun and warned Malek that the other two passengers might be armed. He ordered the three passengers out of the car and searched the car while Malek watched the offenders. He found some shotgun shells on the floor of the back seat and noticed the stock of a shotgun extending onto the floor from under the front passenger's seat. He unloaded the shotgun, removing one live and one spent cartridge. He smelled the odor of fresh powder on the expended cartridge. He also unloaded the .38 Colt and put both guns on the hood of the car. He told Malek to call for assistance. When Malek went back to the police car, they heard for the first time that a police officer had been shot at 74th and Union.

At about that time, a police car driven by Chicago Police Officer Frederick Cowan came down Union. The officers asked Cowan what their location was so they could call for assistance. Cowan backed his car up to look at a street sign and then stayed to render assistance. Cowan searched the offenders and Malek completed searching the car. Malek discovered another revolver (a .38-caliber Smith and Wesson), some .38 cartridges and some shotgun shells. The offenders were then transported to the 7th District. At the station, the officers inventoried the evidence which included one spent .38 cartridge and a spent shotgun shell, and made their reports.

*Chicago Police Officer Carl Malek testified for the State:*

His testimony substantially corroborated Officer Brown's testimony. In addition, he testified that while he was driving down 72nd Street he observed a Corvair stopped in the middle of the street between Union and Emerald and that Bradley Green left the front passenger's seat, walked around the car, and began driving. The car had neither license plates nor taillight reflectors. When the Corvair stopped, Redwine raised his hands immediately after leaving the car. Malek stated that he found a gun (the .38 Smith and Wesson) underneath the driver's seat and some shotgun shells in the glove compartment.

*Chicago Police Officer Frederick Cowan testified for the State:*

At about 1:25 or 1:30 A.M. on June 19, 1970, he received a radio call that an officer had been shot at 74th and Union. He proceeded in his marked patrol car down 71st Street and turned right on Union where he saw a Corvair in the middle of the street. He got out of his car intending

to ask that the stopped car be moved when he recognized Officers Brown and Malek. At their request, he backed his car up to the corner to determine the exact location and then searched the offenders. He recovered some shotgun shells from Sharp.

The other evidence at trial indicates that Officer Kaner died as a result of being shot in the head by a shotgun and by a .38-caliber revolver. Although it appears that the cartridges from the two .38-caliber revolvers recovered at the time of the arrest were commingled prior to being inventoried, ballistics evidence indicated that the .38-caliber weapon which fired one of the fatal shots was the Smith and Wesson revolver found under the driver's seat of the Corvair. The .38-caliber Colt revolver, which was found between Cavin's feet on the floor of the back seat, was identified as Officer Kaner's service revolver. A partial fingerprint found on Officer Kaner's gun was proved to be the fingerprint of Jerome Amos' right ring finger. The shotgun found under the passenger's seat in the Corvair could not be ballistically identified as the other murder weapon. The two-door Corvair was owned by defendant Redwine. Mrs. Bulliner's phone call was received by the police at 1:29 A.M. on June 19, 1970, and a radio call was dispatched at 1:31 A.M.

At the conclusion of this evidence, the State rested its case against Redwine, Green, and Amos. Sharp and Cavin had been previously severed from the case. (It appears that Sharp and Cavin pleaded guilty to the charges.) Without presenting any evidence, Green rested his case and specifically disclaimed further proceedings. Although defendant Redwine initially rested his case, with the permission of the court, he withdrew this decision. Motions for findings of not guilty on behalf of both Amos and Redwine were denied.

*Jerome Amos testified on his own behalf and on behalf of defendant Redwine:*

On the evening of June 18, 1970, he was playing basketball. Redwine, Green and Sharp were present. During the evening, they drank both wine and beer. At about 12 or 12:30 A.M., he, Redwine, Green and Sharp entered Redwine's car. He sat in the right rear passenger's seat; Sharp also sat in the backseat; Redwine sat in the right front seat; and Green sat in the driver's seat. Without driving anywhere, the four of them sat in the car talking and drinking. Cavin was not present. Soon, Amos went to sleep. He did not wake up until Cavin, who had not been in the car when he went to sleep, nudged him and said the police were coming. He looked back and saw the lights of a car behind them. He noticed a shotgun on the floor in front of him and saw Cavin wiping off a handgun. When Cavin put the weapon between the two of them, he pushed it away with his right hand saying, "Don't put it by me." Cavin

then put the weapon somewhere on the floor. After the car was stopped, Green and Redwine got out. Amos did not notice Redwine put his hands in the air. Subsequently, Officer Brown reached into the car and grabbed the gun. Although Amos said he drank about a quart of beer and a couple of pints of wine, he did not know how much alcohol Redwine consumed during the evening.

Following the testimony of certain character witnesses for Amos and final arguments, the court found Green and defendant Redwine guilty as charged. Jerome Amos was acquitted.

OPINION

Defendant contends that the circumstantial evidence presented at trial did not prove beyond a reasonable doubt that he actually shot Officer Kaner or that he was legally accountable for the murder. Specifically he argues that guilt cannot be predicated solely upon his mere presence at the scene of the murder or at the scene of the arrest or upon his possession of or proximity to the fruits of a robbery or the instrumentalities of the crimes.

■■ Criminal liability may be based upon a person's own acts or upon the acts of another for which one is legally accountable. Section 5—2(c) of the Criminal Code ( Ill. Rev. Stat. 1969, ch. 38, par. 5—2(c) ) indicates that a person is legally accountable for the conduct of another when:

> "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid such other person in the planning or commission of the offense."

This section codifies, with certain modifications, the common law rules regarding principals of the first and second degrees and regarding accessories before the fact. Moreover, section 5—3 of the Criminal Code ( Ill. Rev. Stat. 1969, ch. 38, par. 5—3) provides that:

> "A person who is legally accountable for the conduct of another which is an element of an offense may be convicted upon proof that the offense was committed and that he was so accountable, although the other person claimed to have committed the offense has not been prosecuted or convicted, or has been convicted of a different offense or degree of offense, or is not amenable to justice, or has been acquitted."

Mere presence at the scene of the crime, without more, is insufficient to hold anyone legally accountable. (*People v. Shields*, 6 Ill.2d 200, 207, 127 N.E.2d 440, 444.) However, presence at the scene of the crime may be considered along with other circumstances to determine accountability. *People v. Nugara*, 39 Ill.2d 482, 236 N.E.2d 693.

■■ Circumstantial evidence alone may justify conviction of a crime,

but such evidence must not only be consistent with defendant's guilt but also be inconsistent with any reasonable hypothesis of innocence. *People v. Branion*, 47 Ill.2d 70, 265 N.E.2d 1.

In the instant case, although inferences must be drawn from circumstantial evidence, we believe defendant was proved guilty beyond a reasonable doubt. Clearly, Officer Kaner's death was the result of criminal acts. He was shot in the head with a shotgun and a .38-caliber pistol and his service revolver was taken. From the fact that two shots were fired accurately, in rapid succession, and from different weapons, it is reasonable to believe that at least two people committed the crimes. The slamming of a car door immediately after the shooting * indicates that a car must have been present at the scene. Since a recently fired shotgun, the .38-caliber murder weapon, and the officer's service revolver were recovered from defendant's car, it must have been defendant's car which was present at the scene. From the facts that the fruits of the crimes and the instrumentalities of the crimes were all found in defendant's car, just moments after the crimes and within a few blocks of the scene, it may be inferred that the persons who actually committed the crimes were in defendant's car. Because his car was present at the scene of the crimes and because he was present when his car was stopped just moments after the crimes and within a few blocks of the scene, defendant must have been present at the scene of the crimes.

■■ Even if we were to assume that defendant himself did not actually commit the crimes, something more than mere presence at the scene of the crimes was proven here. We believe there is sufficient evidence that defendant intentionally aided and abetted the commission of the crimes. The crimes here were not the acts of one person acting alone. The crimes occurred late at night between 1:25 and 1:29 A.M. Defendant's car was present at the scene of the crimes and was the means of escape. The evidence indicates that the defendant was driving his car after it left the scene of the crimes and certainly he voluntarily permitted his car to be used as the means of escape. The presence of shotgun shells in the glove compartment of defendant's car when a shotgun was one of the murder weapons is evidence of defendant's prior knowledge and participation in the crimes. Also, defendant's act of putting his hands in the air when his car was stopped so soon after the crimes and so close to the scene could certainly be considered by the trier of fact. In these circumstances, we believe the State proved beyond a reasonable doubt

---

* The exhibits, identified by Bulliner, indicate that the driver's door of the police car was open. Bulliner testified that the light in the police car was on. Thus, it was not the door of the police car which was slammed.

that defendant was legally accountable for the murder and armed robbery of Officer Kaner.

Defendant next contends that the court's findings were inconsistent because the court found Amos not guilty. In support of his contention, defendant relies solely upon *People v. Ethridge*, 131 Ill.App.2d 351, 268 N.E.2d 260. In *Ethridge*, defendant and three codefendants were tried together by the court. The evidence against Ethridge consisted of the eyewitness testimony of two police officers while the evidence against a co-defendant consisted of the testimony of the same two police officers, of a third police officer, and of certain physical evidence. Both Ethridge and his co-defendant testified. However, the trial court convicted Ethridge and acquitted his co-defendant. The appellate court reversed Ethridge's conviction based upon the inconsistencies in the trial court's findings.

In the instant case, unlike *Ethridge*, there is nothing inherently inconsistent in the findings of the trial court. Although Amos was acquitted and defendant Redwine was convicted, Amos testified explaining his presence in the car and the presence of his fingerprint on Officer Kaner's gun. Here, the trial court valued Amos' testimony above the circumstantial evidence of his guilt. Amos' testimony, specifically adopted by defendant Redwine, did not contradict the inferences of Redwine's guilt raised by the evidence.

■■ Defendant also contends that he was denied a fair trial when the court improperly shifted the burden of proof to him. There is no evidence in the record before us that the court shifted the burden of proof to defendant. Here, the court properly relied upon the uncontradicted inferences of defendant's guilt raised by the circumstantial evidence presented in the State's case. This reliance upon the evidence presented at trial was not error.

The judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

SULLIVAN, P. J., and DRUCKER, J., concur.