THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EARL WELCH, Defendant-Appellant.

(No. 12689; ▮▮▮▮▮▮▮▮▮▮)

Fourth District—April 10, 1975.

Richard J. Wilson and John L. Swartz, of State Appellate Defender's Office, of Springfield, for appellant.

No appearance for the People.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

Defendant was convicted of the crime of involuntary manslaughter of Florine Cox, also known as Florine Welch, in violation of section 9—3 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 9—3). Defendant received a sentence of 3 to 9 years.

The Illinois Defender Project moved to withdraw as counsel for defendant, and appended to the motion a brief in conformity with *Anders v. State of California*, 386 U.S. 738, 18 L.Ed.2d 493, 87 S.Ct. 1396. The record shows proof of service of the motion and brief upon the defendant. Time was granted to allow the defendant to file additional points and authorities. The defendant has responded to the motion with a letter in which he urges the unconstitutionality of the seizure of various items which had been introduced into evidence.

As always, we have examined the record in discharge of our responsibility.

The defendant was indicted on June 12, 1973, for the murder of Florine Cox. The first trial was declared a mistrial because of a deadlocked jury. On the second time around, the defendant waived the jury and was tried by the court. We briefly summarize the testimony at that trial.

The defendant's brother, Darrell Welch, testified that Earl had called him between 9 and 10 P.M. on June 3, 1973, for help for Florine. Earl told him that Florine had fallen off the couch and would not come to. Darrell came over, saw Florine on the floor, and left to get help.

An emergency squad and various county officials, including the sheriff and deputy sheriffs, soon arrived. Mrs. Cox was pronounced dead by the emergency squad. There were bruises on her arms and face. Photographs taken of the scene and the decedent were introduced into evidence.

Officials at the scene noticed that the couch next to Mrs. Cox and the floor underneath her were damp. Her hair and neck were also wet. Brown stains were seen on the couch, curtains and wallpaper. Parts of these materials were taken for testing. Laboratory analysis showed the stains to be blood and, where sufficient quantities to test were present, the blood was found to be Group B, a relatively rare type. The technician was unable to determine the age of the blood. Testimony was heard which established that Mr. Welch had Type A blood, and Mrs. Cox Type B.

A pathologist testified as to the results of an autopsy performed on Mrs. Cox the day following her death. He testified that there was multiple bruising on her arms. Some of the bruises were 2 to 4 days old and

some were less than 24 hours old. Bruises on Mrs. Cox's face were also estimated to be less than 24 hours old. Death was caused by hemorrhaging in the brain. It was the doctor's opinion that the brain hemorrhaging had been caused by trauma, particularly in view of the multiple bruises. The doctor testified that two brain hemorrhages were involved. One slight hemorrhage had occurred 2 to 4 days earlier. The greater hemorrhage had occurred within 24 hours. He testified that he believed both were the result of trauma such as would result from a blow, but not the result of a fall.

Mrs. Betty Allen testified that she and her husband visited the defendant and Mrs. Cox at their house that day. She last saw Mrs. Cox around 4 P.M. the day of the death, at which time Mrs. Cox appeared normal. Mrs. Crawford, an acquaintance of Mrs. Cox, saw her drive over to the Allen house about 7 P.M. Mrs. Cox did not go in and the witness observed her driving back, in the direction to the Welch house. Mrs. Crawford testified that one side of Mrs. Cox's face was bruised.

Defendant was interviewed by the State's attorney on the night of the death, and also the following day. The interviews were taped and the tapes were introduced into evidence after testimony that defendant had been given and had understood the customary *Miranda* warnings before each conversation. In these tapes the defendant gave his version of the events. He said that he had been working in his garden with a tractor on the evening of June 3. There were some problems because the ground was wet and Florine had come out to help clean the discs. He stated that she had had a previous injury to her leg and that night, the leg buckled and she fell, hitting her head on the tractor. She then went into the house and had a fit such as she had been having for 20 years. She laid down on the couch but fell on the floor, at which point she may have hit a coffee table. Mr. Welch got a pan of water and threw it on her. This did not revive her, although it had revived her from her spells in the past. He testified that he also slapped her to revive her, but otherwise he denies slapping her. He did admit, however, that he had "backhanded" her 2 weeks earlier. When he was unable to revive Mrs. Cox, Mr. Welch called his brother and also the sheriff's office in an attempt to get help. Mr. Welch did not see bleeding at any time. He said that he and Florine were the only ones in the house from the time the Allens left to the arrival of his brother.

Mrs. Cox's son and daughter-in-law both testified that Mrs. Cox visited them frequently for periods each year of 2 weeks to 4 months. They both stated that they had no knowledge of Mrs. Cox having spells at any time. Mrs. Betty Cox testified that when she went to pick up her mother-in-law at the Welch house for visits, Mrs. Cox would have bruises

and cuts. Betty Cox also testified that she had brought Florine to Dr. Williams in Latham, Illinois, in August of 1969.

Dr. Williams testified that he had treated Mrs. Cox for bruises and headaches in August, September, and October of 1969. Mrs. Cox told him that her husband (as she customarily referred to Mr. Welch) had beaten her.

At the conclusion of the trial, the court dismissed one count which charged murder with a blunt instrument, as no evidence was presented concerning any instrument. On the second count, the court found that intent to cause death or great bodily harm had not been proven, but that the court was convinced beyond a reasonable doubt that the defendant had inflicted the injuries which caused death, and had performed those acts recklessly. He therefore found the defendant guilty of involuntary manslaughter.

■■ Numerous items of error are raised in defendant's post-trial motion. One of these is the allegation that some exhibits, such as the materials containing blood from the couch, walls, and curtains, were illegally seized. No search warrant had been issued for the seizure of these materials. These items were in plain view of anyone coming within the house. Therefore, the seizure of items in plain view would be legal if the entry of the officers was legal. *People v. Wright,* 41 Ill.2d 170, 242 N.E. 2d 180.

Mr. Welch's brother Darrell testified that Earl called him for a assistance and, to obtain that assistance, Darrell fetched a special deputy sheriff who lived nearby. Earl Welch, in the taped conversations, stated that he called the sheriff's office to obtain help. There is no testimony which shows that the defendant objected to the entry of the officers.

■■ Defendant also objected to the admissibility of his statements to the State's attorney. A hearing on the motion to suppress had been held and the motion denied. At trial, the officers testified that they informed defendant of his rights, and the defendant indicated that he understood his rights. Defendant is free to waive his rights, and the statement made after voluntary waiver is admissible. *People v. Higgins,* 50 Ill.2d 221, 278 N.E.2d 68.

■■ Defendant also contends that the admission into evidence of the testimony of Mrs. Cox's son, daughter-in-law, and doctor, was error. The testimony of the son and daughter-in-law is relevant in determining the truth of defendant's explanation that Mrs. Cox's death was the result of a spell of a kind she had frequently had. The doctor's testimony about statements that his patient had made to him is admissible as an exception to the hearsay rule. (*People v. Gant,* 58 Ill.2d 178, 317 N.E.2d 564.) Testimony that she said her husband beat her, although evidence of

other crimes, is admissible. This is under the exception which allows evidence of a continued course of conduct which would be relevant to the motive and intent of the defendant's actions the night of the death. They bear on the credibility of defendant's explanation of the events. (*Parsons v. People*, 218 Ill. 386, 75 N.E. 993; *People v. Holland*, 11 Ill. App.3d 591, 297 N.E.2d 310.) Defendant also raises other issues. We have reviewed them all and agree that the record discloses no justiciable issue for review, and that the appeal is without merit and frivolous. Accordingly, the motion of the Illinois Defender Project to withdraw as defendant's counsel is allowed, and the judgment of the trial court is affirmed.

Judgment affirmed.

CRAVEN and GREEN, JJ., concur.