THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DWIGHT CAVIN, Defendant-Appellant.

(No. 56992;

First District (2nd Division)—May 13, 1975.

Dennis Cunningham, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Edward J. Ozog, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Defendant Dwight Cavin (hereinafter defendant) was indicted with four codefendants, Bradley Greene, Jerome Amos, William Redwine and Bruce Sharp, for the crimes of murder, armed robbery and unlawful use of a weapon. Sharp entered a plea of guilty. Amos, Greene and Redwine were tried by the court without a jury, which trial resulted in an acquittal of Amos and the conviction of the latter two.[1] At a subsequent bench trial the defendant was found guilty and sentenced to a prison term of 25 to 50 years.

Defendant now appeals from that conviction presenting the following issues for review:

(1) whether the method of selecting grand jurors in Cook County satisfies constitutional requirements;

(2) whether the trial court erred in refusing to suppress defendant's written confession; and

(3) whether the evidence was sufficient to support a finding of guilty.

On June 19, 1970, Officer Kenneth Kaner of the Chicago Police Department died of a shotgun wound while on duty. That same morning, at approximately 1:28 A.M., defendant and four others were stopped for a traffic violation, arrested and later charged with the murder of Officer Kaner, as well as armed robbery and unlawful use of a weapon.

While in police custody following his arrest, defendant was interrogated by a number of police officers and investigators, and a question-and-answer statement was taken and typed by a police officer which he then refused to sign. Defendant was thereafter taken to the office of the assistant State's attorney at the Criminal Courts Building in Chicago where two assistant State's attorneys questioned him. Defendant eventually gave

---

[1] The conviction of codefendant William Redwine was affirmed by this court, 19 Ill.App.3d 721, 312 N.E.2d 297, and codefendant Bradley Greene's conviction was affirmed 27 Ill.App.3d 1080, 328 N.E.2d 176.

a court-reported statement describing the events leading to the death of Officer Kaner and implicating himself in the crime. Defendant was then given copies of the statements which he reviewed, corrected and signed.

Prior to trial defendant sought to suppress these statements on the grounds that he did not give them voluntarily. In essence, defendant attempted to prove that he had been threatened and physically abused prior to giving the statements, that they were not given voluntarily, and that, indeed, the statements were the result of coercion by the police and assistant State's attorneys. He testified that, at the time of his arrest, a police officer hit him in the eye and on the back of the head with a gun; that, once in the police station, two police officers brought him to a room where they began "jumping" on him; that one officer "slapped" him around; that four or five others then grabbed him, tore his vest, stretched him out on a desk where one hit him in the stomach and the rest "jumped" on him; that a relative of Officer Kaner hit him in the face and kicked him in the stomach; and that assistant State's attorney Robert Beranek handcuffed defendant's arms behind the chair in which he was seated, stood on the handcuffs and slapped him on the head. Defendant further stated that, as a result of these assaults, he was bleeding from the eye and nose, and that his eye was "puffed up" to an extent which caused his vision to become blurred.

The State, on the other hand, called numerous witnesses, including the arresting officers and those who had questioned defendant and taken statements from him. Each of these witnesses denied threatening or abusing the defendant and testified that the defendant gave the statements voluntarily.

The parties also offered into evidence a number of photographs taken of defendant after his arrest. Defendant introduced a photo of himself and his four codefendants which had been taken at the police station a few hours after the alleged beatings took place.[2] The State introduced two additional photographs: one had been taken by a court reporter after he recorded defendant's statements given to the assistant State's attorney; the other had been taken by a guard in the receiving room at Cook County Jail on June 20, 1970 at approximately 10 A.M. The State further offered into evidence the Cook County Jail physical examination report completed and signed by defendant upon his admission to the jail.

The trial court denied the motion to suppress. In doing so, the judge concluded that, as the facial injuries which defendant claimed the police had inflicted upon him were neither apparent in the photographs nor

---

[2] Although there is no specific testimony as to the exact time this photograph was taken, defendant stated that it was taken after he had been beaten and before he spoke with Detectives Fitzgerald and Ptak. The stipulated testimony indicates that these two men met with defendant at approximately 10:30 A.M. on June 19, 1970.

recorded in the Cook County Jail physical examination report, the testimony of the defense witnesses was not believable.

The bench trial then followed, at which time both parties stipulated that the evidence adduced by the State in the trial of Greene, Amos and Redwine and defendant's statements would be the evidence offered by the State.[3] The defendant presented no trial testimony. A brief summary of the significant portions of the trial evidence is appropriate.

At about 1:25 A.M. on June 19, 1970, Officer Kaner, sitting in a marked Chicago police car at the corner of 74th Street and Union Avenue in the City of Chicago, was shot to death. Officer Brown testified that, at approximately 1:28 A.M. on June 19, 1970, he and Officer Malek stopped a Chevy Corvair on Union Street north of 72nd Street in Chicago after they noticed the car had no reflectors or license plates. Redwine exited from the passenger's side of the two-door auto and immediately raised his hands in the air. The driver, Bradley Greene, exited and looked back at the squad car. Three men were seated in the back seat, Sharp behind the driver, the defendant in the middle, and Jerome Amos behind the passenger's seat. After noticing a sticker on the window indicating that a license had been applied for, Officer Brown saw a partially empty quart bottle of beer lying on the floor in the front passenger's side of the Corvair. As he opened the door to retrieve the bottle, defendant bent forward, drawing the officer's attention. At this point Officer Brown noticed the butt of a gun sticking up from between defendant's feet. He then took the gun, ordered the three men in the rear seat from the Corvair, pulled the driver's seat forward, and found a couple of shotgun shells lying on the floor as well as on the rear seat. At this point the officer also observed the butt of what proved to be a sawed-off shotgun protruding from under the passenger's seat. He found one spent cartridge and one live round within the gun and noticed that it had an odor of fresh powder, *i.e.*, "a burn smell."

The parties stipulated that the revolver taken from between defendant's feet was in fact that of the deceased; that the bullet taken from the deceased's wrist was fired from that revolver; and that the cause of death was a gunshot wound of the brain.

The three statements, all given by the defendant on June 19, 1970, indicate the defendant was informed of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, and indi-

---

[3] The record indicates the trial of Greene, Redwine and Amos took place in September, 1970; that the instant trial took place March 25, 1971; that at least two months prior to the March, 1971 trial, a transcript of the September, 1970 trial was available to counsel for Cavin; that the record was reviewed with Cavin. Also on March 25, 1971, not only did Cavin with counsel present agree to the stipulated use of the trial evidence, but there was also a summary of such testimony recited in open court on that date in the presence of the defendant and his counsel.

cate that he understood those rights. In the second statement, in sequence of time, the defendant refused the assistance of an attorney and declined the opportunity to make a telephone call. In the second and third statements, both given to an assistant State's attorney, the defendant stated that each statement was not a result of mental or physical coercion and was voluntarily given. All statements were in the form of questions and answers.

The first statement was given at approximately 4 A.M. to a Detective Davis and was unsigned. In that statement defendant acknowledged being in the Corvair with the four codefendants when a policeman approached and asked if an Arthur Miller was there. Hearing he was not, the policeman left. The defendant and companions then drove six or seven blocks, at which time the Corvair was stopped. Bruce Sharp then exited the car and returned in a minute or two. The men drove off and were then stopped by the police. Defendant denied seeing or knowing about any guns.

At about 2:05 P.M. on June 19, the defendant gave the first of two statements to Assistant State's Attorney Matthew Walsh. In this statement the defendant indicated that after a policeman had approached, inquired concerning an Arthur Miller and returned to his car, one of the men in the Corvair said "Let's get his gun"; they followed the squad car, and upon seeing it stopped, went around the corner and parked; that Sharp, with a double barrel shotgun under his coat, and the defendant exited the car, proceeded to the police car, shot the policeman, took the policeman's revolver and ran. Before defendant signed the typed statement, a handwritten statement was added indicating that a William Redwine also exited the car carrying a pistol.

The third statement was given at 3:30 P.M. on the same day, also to Assistant State's Attorney Walsh. In this statement the defendant indicated that though he had not originally involved his friend Redwine, he now wished to correct his statement to read that Redwine, Sharp and defendant had approached the police car, Redwine had fired a pistol into the squad car from the passenger's side, and the defendant, from the passenger's side, had reached through the window and removed the policeman's gun, and had then returned to the Corvair, wiped off the revolver and passed it to Jerome Amos. The defendant stated the officer was shot for his gun.

Having heard all this evidence, the trial court found defendant guilty of all three charges.

## I.

Before considering the issues raised by defendant in his brief, we shall initially consider defendant's motion, made by his attorney at the

time of oral argument before this court, that Justice Stamos, a member of the panel, not participate in the determination of this appeal due to the fact that the conduct of his former associates, while he was State's attorney and assistant State's attorney of Cook County, is at issue in the primary point raised by defendants as grounds for reversal of his conviction. Defendant strongly questioned the propriety of Justice Stamos sitting on this case which calls for a review of the propriety of the trial court's decision to admit defendant's confessions into evidence. This court denied defendant's motion at the time it was made.

We first note that defendant failed to properly present his motion. Supreme Court Rule 361 clearly states that motions in the reviewing court shall be in writing stating the relief sought and the grounds therefor, and when based upon facts not of record, shall be supported by affidavit. (Ill. Rev. Stat. 1973, ch. 110A, par. 361(a).) The rule further requires that the motion, together with proof of service, shall be filed with the clerk of the appellate court, which requirements will be excused only in cases of necessity. Ill. Rev. Stat. 1973, ch. 110A, par. 361(b)(1).

■■ Defense counsel also commented during oral argument before this court, that he disapproved, on similar grounds, the hearing of defendant's case by Judge Garippo in the circuit court. However, defendant acknowledged he failed to move for a substitution of judge at any time in the trial court.[4] Thus, he has thereby waived any such objection. Ill. Rev. Stat. 1973, ch. 146, par. 35; *People v. Lawrence* (1963), 29 Ill.2d 426, 194 N.E.2d 337; *People v. Peaslee* (2nd Dist. 1972), 7 Ill.App.3d 312, 287 N.E.2d 309.

Justice Stamos was State's attorney of Cook County from December, 1966, until December 2, 1968, at which time he was sworn in as a member of this court. From 1954 through 1966 he served in various capacities as an assistant State's attorney. Amongst the approximately 170 people in the State's attorney's office who served during that period were the trial judge Judge Garippo and the assistant State's attorneys who participated in this case.

Normally the judges of this court will recuse themselves, without the need for motion, where there appears in the record any basis for suggesting that a possible conflict might arise. The incidents, about which this appeal is concerned, took place in June, 1970, some 25 months after Justice Stamos left the State's attorney's office. We know of no professional requirement or standard, nor could or did defense counsel

---

[4] Section 114—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 114—5) provided—and still provides—two methods for filing a motion for substitution of judge. Within 10 days after assignment a defendant is entitled to an automatic substitution, and at any time a motion for cause supported by affidavit may be made.

cite any, which would require a judge to recuse himself under such circumstances. Importantly, counsel's motion and comments assume facts which he did not bother to support in any way. Although we generally would dismiss without comment defendant's cavalier motion under such circumstances, and considering the equally off-hand way in which reference was made to the proceedings in the trial court, we have deemed it appropriate to comment.

In the trial court, the cause was initially assigned to Judge Garippo on July 20, 1970. Attorney Dennis Cunningham, who also is defendant's appellate counsel, filed his appearance on the same date and has been defendant's lawyer since that time. Thereafter, defendant filed certain motions and hearings were conducted, a bench trial was held and defendant, having been found guilty, was sentenced on March 25, 1971. At no time did the defendant make a motion pursuant to section 114—5. The record was filed in this court on February 2, 1972, and was assigned to this division on February 7, 1972, and thereafter, notice of the said assignment was published in the Chicago Daily Law Bulletin on February 8, 1972. Oral argument in this court was held March 25, 1975, after notice had been given on February 25, 1975. Defendant at no time filed in this court any written motion as to Justice Stamos. In our opinion this historical background clearly illustrates the frivolous nature of defendant's motion before this court. We are aware that counsel for defendant prior to 1970 and since that date was experienced in the trial and appeal of criminal matters in this State. If at any time counsel believed there was any merit to his contention, or had any specific facts in support of his position, he had a duty to follow proper procedures in bringing such matters to the attention of the court. Having failed to do so, we can only conclude there is no merit to his contentions.

## II.

Defendant assails the method used to select grand jurors in Cook County and contends that, since the 1970 grand jury was selected by unlawful and unconstitutional means, the trial court erred in refusing to dismiss the indictment against him. In his brief defendant adopts the argument made in *People v. Blair* (1st Dist. 1974), 17 Ill.App.3d 325, 307 N.E.2d 679, *leave to appeal denied,* 56 Ill.2d 583, and asks this court to review the pertinent materials and evidence submitted to the court in that appeal.

■■ In our opinion in *Blair,* we discussed this issue at great length, concluding that, on the evidence presented, defendant had failed to sustain the requisite burden of making out a prima facie case of purposeful discrimination of constitutional proportions, and that the Illinois statute which prescribes the standards to be met by citizens to qualify for jury

service is not unconstitutionally vague. (*Blair*, 17 Ill.App.3d 325, 329-35.) As defendant, relying upon the record and argument in *Blair*, presented no new evidence in this cause, we adhere to our holding as enunciated in *Blair* and conclude that the trial court committed no error in refusing to dismiss the indictment against defendant.

## III.

Defendant next maintains his confession was coerced and should have been suppressed by the trial court.[5] Defendant emphasizes that the fifth amendment protection against self-incrimination demands not only that a prisoner be informed of his rights as set forth in and required by *Miranda*, but also that he fully comprehend that he may remain silent, speak to a lawyer prior to making any statement, and that he will suffer no consequences if he chooses not to speak.

We note at the outset there is no dispute that defendant was informed of his rights and subsequently waived them, for defendant admitted at the hearing on his motion to suppress that he had been given the *Miranda* warnings many times. Indeed his statements reveal that he knowingly understood and waived the rights to have an attorney present and to make a telephone call. The critical question before this court then is whether defendant had been coerced into waiving his *Miranda* rights and confessing to his participation in the crimes. An inquiry into the voluntary nature of a confession is to be decided by the trial court, which decision need not be supported by proof beyond a reasonable doubt. The trial court's decision will be set aside only when it is found to be contrary to the manifest weight of the evidence. *People v. Higgins* (1972), 50 Ill.2d 221, 225, 278 N.E.2d 68, *cert. denied,* 409 U.S. 855; accord, *People v. Prim* (1972), 53 Ill.2d 62, 70, 289 N.E.2d 601; *People v. Burbank* (1972), 53 Ill.2d 261, 266, 291 N.E.2d 161; *In re Lamb* (1974), 21 Ill.App.3d 827, 835-36, 316 N.E.2d 42; *People v. Gunn* (1973), 15 Ill.App.3d 1050, 1054, 305 N.E.2d 598.

In the instant case defendant testified that at the time of his arrest, a police officer hit him in the head and face with a metal object; that from 4 to 11 police officers jumped on, punched and kicked him in a small room at the police station; that the deceased's brother-in-law was permitted to kick and beat him; that he was bleeding from the face, eyes, nose and mouth; and that he vomited as a result of the beatings. Three

---

[5] The defendant filed on October 27, 1970, a motion entitled "Motion To Suppress Statement By Defendant." Testimony on that motion commenced on October 27, 1970, and concluded on October 30, 1970, and the motion was thereafter denied. It is the ruling on that motion which defendant now challenges. On March 25, 1971, the defendant also filed a motion entitled "Motion To Suppress Evidence and Quash Arrest," which was denied on the same date. The defendant does not challenge the ruling on the latter motion.

inmates at the Cook County Jail further testified that when he was admitted to the jail, defendant's left eye was swollen and he had several scars on his face.

The testimony of the officers, the assistant State's attorneys and court reporter directly contradicted that of the defense witnesses. Defendant does not contend that the State failed to call all of the police officers and others involved in the alleged mistreatment.

■■ As noted earlier, the trial court, in announcing its ruling, commented on the facts that certain photographs of defendant revealed none of the alleged facial abrasions and the Cook County Jail physical examination report contained no record of same. We have looked at these exhibits and agree with the trial court's conclusion. The record indicates that the photos were taken after the alleged beatings, yet proximate enough in time that any physical evidence of such beatings would still be apparent. In light of the contradictory testimony offered at the hearing, these exhibits became particularly significant. In our opinion, the trial court's denial of the motion to suppress is amply supported by the manifest weight of the evidence.

## IV.

Defendant finally contends that, without the coerced confession, the evidence as stipulated to was insufficient to support a finding that defendant was guilty beyond a reasonable doubt.

■■ Without defendant's confession the evidence forming the basis of his conviction is circumstantial in nature. Nonetheless, circumstantial evidence is legal evidence and can be sufficient to support a conviction where it is sufficient enough to satisfy the jury of the guilt of the defendant beyond a reasonable doubt. (*People v. Hansen* (1955), 5 Ill.2d 535, 540, 126 N.E.2d 243; *People v. Robinson* (1958), 14 Ill.2d 325, 331, 153 N.E.2d 65; *People v. Brown* (1963), 27 Ill.2d 23, 187 N.E.2d 728, *cert. denied*, 374 U.S. 854, 10 L.Ed.2d 1075, 83 S.Ct. 1923.) It has been held that where a conviction rests upon circumstantial evidence which raises little more than a suspicion against an accused and leaves a grave and serious doubt of guilt, a reviewing court will not hesitate to reverse the finding of the trier of fact. (*People v. Dougard* (1959), 16 Ill.2d 603, 607, 158 N.E.2d 596; *People v. Lenker* (1st Dist. 1972), 6 Ill.App.3d 335, 340, 285 N.E.2d 807; *People v. Hayes* (1st Dist. 1972), 4 Ill.App.3d 997, 999, 282 N.E.2d 777.) In the instant case, the defendant was found with the deceased officer's gun in his possession less than 5 minutes after and two to three blocks from the scene of the officer's homicide. That fact raises far more than a mere suspicion of his guilt.

In addition to Officer Kaner's .38-caliber revolver, the arresting officers also discovered in the two-door Corvair a .38-caliber Smith and Wesson

under the driver's seat, a sawed-off shotgun along with one spent cartridge which had a fresh burnt smell under the front passenger's seat, and numerous shotgun shells on the back seat floor, on the back seat and in the glove compartment. All of this evidence strongly supports the finding that the defendant was guilty of the crime charged. In fact, to suggest any other conclusion would be requesting this court to close its eyes and minds to the obvious, and to open the gates beyond which all circumstantial evidence would be forever banished. Accordingly the evidence, even without defendant's confession, was sufficient to support a finding of guilty.

As we have concluded that the trial court properly refused to suppress defendant's confession however, the contents of that confession may be considered in determining whether the evidence was sufficient to support the conviction.

While defendant in his statements accused Sharp of the actual shooting, he also supplied information which implicated himself in the commission of the crime, to wit: he accompanied Sharp and Redwine to the deceased's squad car; he stood by as Sharp shot the officer and Redwine shot into the squad car; and he took a revolver from the body of the deceased and carried it back to the Corvair.

■■ A person is legally accountable for the conduct of another when:
"Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1969, ch. 38, par. 5—2(c).)

While mere presence at the scene of a crime is not sufficient to convict a person as an accessory or accomplice (*People v. Kessler* (1974), 57 Ill.2d 493, 496, 315 N.E.2d 29; *People v. Thicksten* (1958), 14 Ill.2d 132, 134, 150 N.E.2d 813; *People v. Smith* (1973), 10 Ill.App.3d 501, 504, 296 N.E.2d 15), the evidence in the case at bar reveals that defendant did more than just stand by during the commission of the crime. He accompanied Sharp and Redwine to the squad car for the express purpose of seizing the officer's gun. He stood by as Sharp fired the gun, took the officer's revolver, and fled with his comrades. This evidence leaves no doubt of defendant's active participation in the crime, and consequently we hold that the evidence was sufficient to support a finding of guilty beyond a reasonable doubt.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

STAMOS and LEIGHTON, JJ., concur.