*In re* BOBBY MORRIS, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* BOBBY MORRIS, Respondent-Appellant.)

First District (5th Division)   No. 62914

Opinion filed May 13, 1977.

James J. Doherty, Public Defender, of Chicago (David W. Hirschboeck, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

The minor respondent, Bobby Morris, along with a companion, Julian Vaughn, was charged with murder, armed robbery and burglary in a delinquency petition filed on December 4, 1974. On March 21, 1975, while represented by counsel, respondent entered admissions to the offenses

of murder and armed robbery, and was subsequently found delinquent and committed to the Department of Corrections. Respondent appeals and contends: (1) that the court failed to substantially comply with Supreme Court Rule 402(a)(2) (Ill. Rev. Stat. 1973, ch. 110A, par. 402(a)(2)) in that he was never informed as to the possible duration of his commitment should he persist in his admissions; and (2) that the court erred in denying respondent's motion to suppress certain oral statements. We affirm. The pertinent facts follow.

Respondent was arrested on December 3, 1974, in connection with the shooting death of Juanita Jones during an armed robbery. At that time respondent made an oral statement concerning the incident in the presence of the arresting officers. Respondent subsequently made two oral statements concerning the incident, but, through his parents, refused to give a written statement. It was agreed between the parties that respondent's *Miranda* rights were read to him at each interrogation, prior to each statement.

On December 12, 1974, the respondent filed a motion to suppress these oral statements contending that due to respondent's lack of mental capacity it was impossible for him to understand his *Miranda* rights, and therefore respondent could not have made a knowing and intelligent waiver of these rights.

At the request of defense counsel a clinical psychological evaluation was ordered for the purpose of determining the ability of respondent to make a knowing and intelligent waiver of his rights. Two evaluations were performed on respondent: one by Dr. Robert E. Bussell, the court-appointed psychiatrist, and one by Miss Mary Liemert, a private psychologist called by respondent.

At the hearing on the motion to suppress Dr. Bussell testified that he was Director of the Department of Clinical Services for the Circuit Court of Cook County, Juvenile Division. He had practiced as a psychiatrist for approximately 11 years and had interviewed some three to four thousand people during that time. He conducted an examination of respondent on January 10, 1975, pursuant to a court order.

Dr. Bussell's examination of respondent lasted about 35 to 40 minutes, of which approximately 20 minutes was spent relative to the *Miranda* warnings. He did not administer any formalized tests to respondent during the interview. In his opinion tests such as the "Wisc-R Chronological test" would not have significantly aided in evaluating respondent's ability to waive his rights. Based on the interview, Dr. Bussell concluded that respondent had adequate comprehension of the warnings given him by police, and that he did in fact knowingly and intelligently waive his rights.

The written report prepared by Dr. Bussell following the examination was received into evidence. In pertinent part it stated:

> "In discussing the sequence of events following his apprehension, he recalls quite specifically being apprised of his rights via the Miranda Decision. He states that he recalls the detectives inquiring if he understood what they had said and he is confident that he did understand. He has some question whether his friend, Julian, understood in view of the fact that Julian asked Bobby what, 'silent' means. Bobby states that he told Julian that 'it means that you don't have to say anything'. Bobby states that he did give a narrative version of what happened at the police station but choose [*sic*] to remain silent in court on the advice of his father.

> "It is this examiner's opinion that his general understanding of the Miranda Decision is adequate to allow him to respond or not respond to questioning as he saw fit. * * *"

While Dr. Bussell concluded that respondent was functionally illiterate and below average in intelligence, he also found that respondent's vocabulary and general knowledge placed him above the formal category of retardation.

Miss Mary Liemert, a registered psychologist holding a master's degree in psychology and speech pathology, testified that she had interviewed respondent for approximately three hours on February 21, 1975. She administered a number of tests to respondent, including the Wisc-R test, which she characterized as an intelligence test particularly pertinent to abstract reasoning and conceptualization. The test results indicated that respondent was operating on a mental level of "below age five." Respondent registered an I.Q. of 52, which is in "what was once called the imbecile range." Miss Liemert concluded that respondent did not have the intellectual capacity to have made a valid waiver of his rights.

On cross-examination Miss Liemert stated that respondent was in ninth grade, that his father told her respondent "got along" in school, and that she had not seen an educational report on respondent. She stated that respondent was "streetwise," meaning that he had a superficial understanding of situations, and knew what he had to do in order to "get by" in such situations. The witness answered affirmatively when asked by the court whether respondent understood well enough to be able to make an election on whether to speak or to remain silent.

On redirect examination, Miss Liemert expressed the opinion that respondent had reached the ninth grade because he was "socially promoted" by being quiet in school and submitting to authority. The Liemert report was admitted into evidence.

Based on the foregoing evidence the court denied respondent's motion

to suppress, finding that there was no reason to think that respondent was incapable of knowingly waiving his rights. The cause then proceeded to trial.

At trial, the court explained at length to respondent the effects of his entering an admission. The court stated that respondent had a right to proceed to trial, rather than admitting guilt. Respondent stated that he understood the nature of the choice. The court then explained how a trial would proceed and admonished respondent not to admit to the killing if he did not do it. In reference to the possible duration of respondent's commitment to the Department of Corrections should his admissions be accepted by the court, the following exchange occurred:

"The Court: I said that I would have to be absolutely certain that you killed that lady.

Respondent Morris: Yes, sir.

The Court: Or that you had something to do with it. It doesn't mean that you had to be the fellow who held the gun and shot her, but you were with the fellow who did. Okay? All right. And I'd have to be really sure of that. Now, if you really did it, and you want to admit to it—I have to tell you this—that if you admit, your punishment is for me to choose. And I don't have to keep any promises to either one of you that anybody else may have made. And I don't have to follow any suggestions that anyone might make to me. I am the one who decides, nobody else. And I get to do—well, not anything, but I could send you to the Department of Corrections where you would stay, probably for a long time. Do you understand that?

Respondent Morris: Yes, sir."

The court later reaffirmed that respondent understood what he had been told, and respondent stated that he had no questions to ask the court.

Following this exchange respondent entered admissions as to the counts of murder and armed robbery. In response to questions from the court, respondent stated that he had gone to the victim's store with two others in order to rob her. He stated that he shot the victim with a .22-caliber pistol while one of the others gathered the money. They then left the store together. Respondent also took a .38-caliber revolver from the store.

The court ruled that it would accept respondent's admissions and entered a finding of delinquency. On March 31, 1975, the court committed respondent to the Department of Corrections. This appeal follows.

■■ Respondent initially contends that the court failed to substantially comply with Supreme Court Rule 402(a)(2) in that he was never informed as to the possible duration of his commitment should he persist in his admissions. Respondent was 15 years old at the time of his admission and

could be held by the Department of Corrections until he reached 21 years of age. (Ill. Rev. Stat. 1973, ch. 37, par. 705—11(3).) We find no merit to this contention, in light of our Supreme Court's recent holding in *In re Beasley, et al.* (1977), 66 Ill. 2d 385, 362 N.E.2d 1024. The court concluded in *Beasley* that Rule 402 was not intended to apply to other than criminal cases, and that admissions in juvenile court proceedings need only be made intelligently and knowingly in accord with due process. As the *Beasley* court stated:

> "It is sufficient to satisfy due process requirements that it be apparent from the record that the minors were aware of the consequences of their admissions; that is, that they understood their rights against self-incrimination, their rights to confront their accusers and their rights to a trial; that by the admissions they waived these rights and that the waiver conferred upon the court the authority to treat them in a manner authorized by the Juvenile Court Act."

Thus, there is no requirement under due process that a minor be informed of the possible duration of his commitment under the Act.

■■ In *Beasley* each minor respondent was informed that as a result of his admission the court could commit him to a State institution. The Supreme Court found such an admonishment sufficient. In the instant case a similar admonishment was given respondent, and we therefore find that the court adequately informed respondent of the consequences of his admissions so as to comply with the standard enunciated in *Beasley*. The record shows that respondent realized the consequences of his admissions. The court took great pains to explain to respondent what rights he was waiving, and respondent indicated that he understood what the court was telling him. In view of this record, we find that the court properly accepted respondent's admissions in accordance with the due process requirements of law.

Respondent's second contention is that the court erred in denying his motion to suppress certain oral statements. We disagree.

■■ Although there is no doubt that defendant was advised of his *Miranda* rights prior to each interrogation and statement, the question presented by respondent is whether he knowingly and intelligently waived those rights. As our supreme court stated in *People v. Turner* (1973), 56 Ill. 2d 201, 206, 306 N.E.2d 27, 30:

> "This court has long recognized that the mental capacity of a defendant must be taken into consideration in determining whether his actions were voluntary (*People v. Klyczek*, 307 Ill. 150, 155) and while mental deficiency, of itself, does not render a confession involuntary (*People v. Hester*, 39 Ill. 2d 489), it is a factor which must be considered in the totality of the

circumstances under which the right to counsel was waived or a statement or confession made. [Citations.]"

■■ In *People v. Simmons* (1975), 60 Ill. 2d 173, 326 N.E.2d 383, our supreme court emphasized that the circuit court must take "special care in scrutinizing the record" in determining whether the statement of a "borderline-mentally-retarded" juvenile was voluntary. However, the trial court's determination as to the voluntary nature of a confession or statement will not be disturbed on review unless it is contrary to the manifest weight of the evidence. *In re Lamb* (1975), 61 Ill. 2d 383, 336 N.E.2d 753, *cert. denied*, 425 U.S. 938, 48 L. Ed. 2d 180, 96 S. Ct. 1672 (1976); *People v. Higgins* (1972), 50 Ill. 2d 221, 278 N.E.2d 68, *cert. denied*, 409 U.S. 855, 34 L. Ed. 2d 100, 93 S. Ct. 195.

The record in the instant case discloses that the circuit court properly fulfilled its role in determining the voluntariness of respondent's statements. There was no evidence of police misconduct of any kind before the court. Respondent's three statements were all made within a three-hour period following his arrest, and two of the statements were made in the presence of his father. The only evidence of respondent's educational progress was that he was in ninth grade and "got along" well enough.

The court also had before it the testimony of two expert witnesses. Dr. Bussell indicated that, while respondent was of below normal intelligence, in his opinion respondent did knowingly waive his rights. This opinion was based on an interview with respondent, a significant portion of which was spent in discussing the particular wording of the *Miranda* warnings. Dr. Bussell's report indicated that respondent was able to define "silent" to his companion, Julian Vaughn, as meaning "that you don't have to say anything."

Miss Liemert, on the other hand, stated that in her opinion respondent lacked the mental capacity required to waive his rights. She based her opinion on a number of formalized tests which showed respondent to be in the imbecile range. However, Miss Liemert did state to the court that respondent understood well enough to be able to make an election on whether to speak or remain silent.

■■■ The trier of fact is not obliged, as a matter of law, to accept the ultimate opinions of psychiatrists or psychologists. (*People v. Banks* (1974), 17 Ill. App. 3d 746, 308 N.E.2d 261.) It was for the court, as the trier of fact, to weigh the testimony and determine the credibility of the expert witnesses. (See *People v. Banks; People v. Oberlander* (1969), 109 Ill. App. 2d 469, 248 N.E.2d 805.) It is evident, in the instant case, that the court accepted the opinion of Dr. Bussell while rejecting that of Miss Liemert. We cannot say that such a choice was so palpably erroneous as to require reversal.

■■ The testimony of Dr. Bussell, in conjunction with the other evidence concerning both respondent and the circumstances obtaining at the time the statements were made, was sufficient to support the court's determination that respondent knowingly waived his right to remain silent. Even the Liemert testimony would bolster such a conclusion to the extent she stated that respondent was "streetwise" and able to make an election on whether to speak or remain silent. Based on this record we cannot say that the trial court's determination that respondent's statements were voluntary was against the manifest weight of the evidence. Thus, the court properly denied respondent's motion to suppress.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.