THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM A. FITZGERALD, Defendant-Appellant.

First District (3rd Division)   No. 77-241

Opinion filed December 7, 1977.

James Geis, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Kevin P. Bolger, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court: The defendant, William A. Fitzgerald, was charged by information

with armed robbery of Viola Schneider and attempt armed robbery of Roberta Schneider. Following a bench trial, the defendant was convicted of robbery of Viola Schneider and attempt robbery of Roberta Schneider and sentenced to concurrent penitentiary terms of 1 to 5 years. (Ill. Rev. Stat. 1975, ch. 38, pars. 18—1 and 8—4.) On appeal, the defendant contends (1) he was denied a fair trial by the State's failure to disclose two items of exculpatory evidence; (2) since the trial court heard the defendant's subsequently withdrawn offer to plead guilty, the court should have recused itself and (3) the trial court abused its discretion in denying probation to the defendant by considering the fact that a weapon was used in committing the crime, although the defendant was acquitted of armed robbery and attempt armed robbery.

On January 11, 1976, Viola Schneider and her daughter, Roberta, were walking on the street to a hospital when a youth identified at trial as the defendant walked in front of Viola Schneider and said, "Hold still. This is a holdup." The defendant went through her pockets, taking a package of cigarettes, a lighter, a medical card, and a small purse containing two quarters, two nickels and three dimes. A second, younger youth, stepped from behind the two women and told them to be still. He was holding a gun, the barrel of which was sticking out from a large, green plastic bag. The defendant searched Roberta Schneider's pockets, but found them empty. After the two youths ran off, the two women proceeded to the hospital a half-block away and they informed a police officer of the incident and described the two youths.

In response to a radio message, Chicago police officer Donald Johannsen saw the defendant and another youth who matched the description of two persons wanted for an armed robbery that had just occurred approximately one block away. One of the youths was carrying a plastic bag with what appeared to be a sawed-off rifle or shotgun inside. He chased the two boys into a building and followed their wet footprints up the stairs to an incinerator, then to a landing where he arrested the defendant and another youth. Officer Johannsen returned to the incinerator where he found a plastic bag containing a sawed-off .22 caliber pellet rifle. Within minutes of the original robbery, both victims identified the two subjects. Change consisting of two quarters, three dimes and two nickels was recovered from the defendant. The weapon was not introduced at the defendant's trial because it had been inadvertently disposed of by the police.

The defendant testified that following his arrest the two complainants pulled up in a squad car and the officer took him and the other youth, Mark Dickens, out of another car in handcuffs. They were the only young persons present. The defendant saw Dickens stuff the plastic bag into the

incinerator, but did not see what was in the bag, although he did see a piece of steel sticking out.

After the defense had rested, the defendant filed a written motion to dismiss the information and to strike the testimony of the State's witnesses because the victims had identified a person other than Dickens as one of their assailants. The defendant contended this was evidence favorable to the defendant, which should have been supplied under the provisions of Supreme Court Rule 412(c). The defendant's pretrial request for discovery asked for "any physical evidence or scientific evidence that might be or would be favorable to the defense" and whether any person had identified "anyone other than the accused as the perpetrator or participant in the offense." (Ill. Rev. Stat. 1975, ch. 110A, par. 412(c).) The prosecutor then tendered his entire file to the defendant's counsel, who, after examining its contents, concurred with the statement of the prosecutor that the file contained no information concerning the alleged misidentification. The court granted the defendant leave to reopen the case and to present any evidence he wished, and the case was continued for two days. When proceedings were resumed, the assistant State's attorney represented he had spoken with the witnesses, who confirmed their trial testimony that they did not see any lineup.

Mark Dickens then testified that sometime in June the victims were asked to pick out the youth who was supposed to have robbed them. This happened at the Audy Home in a room outside of the courtroom. The defendant was not present, but about 20 persons were sitting or standing in the room. The victims, with a police officer present, walked around trying to pick out the youths and pointed to another person, not Dickens. The court denied the defendant's motion to dismiss.

The trial court observed that the weapon had not been produced at trial and it did not know exactly what sort of weapon was used. The court also noted that the defendant did not personally carry the weapon. Thus, the court found the defendant guilty of the lesser offenses of robbery and attempt robbery.

In a post-trial motion, the defendant asked for a new trial in part on the ground that the State had also violated the discovery rules because they had in their possession a photograph taken by the police of the defendant on January 11, 1976, showing a half-dozen hair curlers in the defendant's hair so prominently displayed that they would have been observed by the victims of the robbery. This motion was denied.

The defendant contends that the State failed to provide two items of exculpatory evidence prior to trial, thus depriving him of a fair trial. The State is required, by the terms of Supreme Court Rule 412(c) to disclose to defense counsel "any material or information within its possession or

control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor." (Ill. Rev. Stat. 1975, ch. 110A, par. 412(c).) Defendant relies primarily on the case of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. Brady requested specific evidence in the form of extrajudicial statements by his accomplice, Boblit, and the State suppressed one of Boblit's statements, which indicated he, rather than Brady, actually strangled the victim. The United States Supreme Court reversed because of this violation of Brady's constitutional rights. The defendant in this case contends *Brady* requires that he be granted a new trial.

Considering first the State's alleged suppression of the fact that the victims were unable to identify the defendant's juvenile accomplice, it is questionable if *Brady* applies at all. Unlike the situation in this case, *Brady* concerned information discovered after trial, unknown to the defendant but known to the prosecution. Here the information was known to the defendant before the trial ended and he was granted a continuance of several days to present the information to the court. The court had the opportunity to weigh this evidence in reaching its finding. Moreover, the State was not shown to have been aware of this information, if in fact the incident took place as Dickens testified. The defendant's cross-examination of the victims suggests that the defendant had some knowledge of this information. Both victims were cross-examined about whether a photograph of the defendant had been shown to them prior to the identification; Viola Schneider was asked if she had positively identified Dickens at trial, to which an objection was sustained. She said she did not have occasion to identify Dickens at the Audy Home.

■■■ Even if the defendant's request for prior identification should be considered under the *Brady* rule, we do not believe reversible error occurred. In the recent case of *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392, the Supreme Court made it clear that the consequences of nondisclosure of information known to the prosecution but unknown to the defense turns on the nature of the request. When the prosecution suppresses evidence in the face of a specific request for such evidence by the accused, as in *Brady*, the prosecution's failure to make "any response," is "seldom, if ever, excusable." (427 U.S. 97, 106, 49 L. Ed. 2d 342, 351, 96 S. Ct. 2392, 2399.) The court in *Agurs* pointed out that in *Brady*, the prosecutor had "notice of exactly what the defense desired." In situations in which a defendant either made no request at all, or a general request such as one for "all *Brady* material" or "anything exculpatory" the following test is applied:

> "The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt

beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." 427 U.S. 97, 112-13, 49 L. Ed. 2d 342, 354-55, 96 S. Ct. 2392, 2401-02.

In the case at bar, the defendant contends that his request to be informed whether any person had identified "anyone other than the accused as the perpetrator or participant" in the offense was a specific request, thus, invoking the rule in *Brady v. Maryland* and requiring the State to disclose the victims' alleged misidentification of Dickens as one of their assailants. The State disputes this contention and contends that in a busy State's attorney's office, such as that in Cook County, it would be difficult for an assistant State's attorney handling primarily adult felony prosecutions to determine whether there was any disposition or evidence in a related juvenile case that would be exculpatory to the adult defendant. The State claims the defendant failed to specifically request information concerning the victims' identification of Dickens. Although the defendant's request here was more specific than a request for "all *Brady* material," it cannot be considered to be a specific request for a particular item of evidence or information as was involved in *Brady* where the statements of a particular accomplice were requested. Since the defendant did not make a request for specific evidence, the test announced in *Agurs* determines whether the omitted evidence requires a new trial.

In *People v. Jones* (1977), 66 Ill. 2d 152, 361 N.E.2d 1104, the court said its concern, under *Agurs*, is not with whether the omitted evidence "might" have affected the judge's finding, but whether, in the context of the entire record, it created a reasonable doubt of the defendant's guilt that did not otherwise exist. Essentially, Dickens testified that both complaining witnesses did not identify him, but identified another juvenile. But cross-examination of Dickens shed some doubt on the credibility of his testimony. His testimony, even if accepted, does not necessarily impeach the testimony of the two witnesses who positively identified the defendant at trial. Dickens had difficulty describing either of the victims and his description of the alleged misidentification clearly indicates a lineup was not being held at the time. Moreover, it is apparent that the victims got a better look at the defendant than they did at his accomplice. Dickens' testimony raised an issue of credibility. The trial

court had the opportunity to compare the testimony of the victims with that of Dickens. Considering the entire record, Dickens' evidence did not create a reasonable doubt of the defendant's guilt that otherwise did not exist.

The defendant did not make a specific request for the second item of evidence allegedly withheld, the photograph showing the defendant with curlers in his hair. This evidence would have been of only slight value to the defense since both witnesses testified that the defendant wore a knit cap covering his head. The photograph did not create a reasonable doubt of the defendant's guilt that did not otherwise exist.

■■ The defendant next contends that the trial court should have withdrawn because it heard the defendant's subsequently withdrawn offer to plead guilty, and refers to Rule 402(f) which provides that plea discussions or offers to plead not resulting in a plea of guilty are not admissible. Under certain circumstances, the trial judge should recuse himself. For example, Rule 402(d)(2) provides that if the judge concurs in the terms of the plea agreement but later withdraws his concurrence, and the defendant withdraws his plea, "the trial judge shall recuse himself." (Ill. Rev. Stat. 1975, ch. 110A, par. 402(d)(2).) In this case, however, the record is clear that the trial judge did not partipate in the plea discussions and did not concur in the terms of the plea agreement supposedly reached. The prosecutor informed the court that the result of the discussions between the lawyers was a recommendation by the State of 4 years to 4 years and a day on the armed robbery charge; however, following a discussion in chambers, the defendant's counsel stated that the defendant mistakenly thought he would get 4 years probation and 1 day in jail and wished a bench trial. The court admonished the defendant of his right to a jury trial and when the defendant appeared to "hesitate," adjourned over the noon hour so the defendant could consult with his lawyer. Subsequently, the defendant and his counsel confirmed the defendant's desire to waive a jury.

■■ Thus, the record does not show that any information concerning the offense or the defendant's background was disclosed to the trial judge. The defendant does not claim prejudice and since the defendant did not make a motion for substitution of judges in the trial court, he was thereby waived such issue. (*People v. Cavin* (1975), 28 Ill. App. 3d 863, 329 N.E.2d 382.) Nothing in the record suggests that the trial court was unable to preside impartially and no error resulted from its participation.

■■ Finally, the defendant contends the trial court erroneously based his sentence on the offenses for which the defendant was acquitted rather than on those for which he was convicted. This contention is based on the following remark of the trial court to the defendant at the hearing in aggravation and mitigation: "But when you approach people on the

street, women, an old lady and a young girl, two men, they are men when they carry guns, and rob people, those are very serious offenses." *People v. Hill* (1973), 14 Ill. App. 3d 20, 302 N.E.2d 373, cited by the defendant, is distinguishable. There, the trial court in denying probation and sentencing the defendant to the maximum penalty for a misdemeanor, commented that the defendant might have been charged with a felony rather than a misdemeanor. In this case, however, the court did not find the defendant guilty of armed robbery because the weapon itself was not produced and because his companion, rather than the defendant, was carrying the weapon. It is not inconsistent with this finding for the court to have observed that there was credible testimony that a weapon was used in the robbery and to consider this evidence in setting the defendant's sentence.

It is clear that the defendant was not sentenced for armed robbery. The minimum possible sentence for robbery, a Class 2 felony, was imposed. In *People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673, the Illinois Supreme Court commented that the sentence imposed by the trial court would not be disturbed "unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose." See also, *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882. Under the circumstances, the trial court did not abuse its discretion in denying the defendant probation and sentencing him to 1 to 5 years.

For the foregoing reasons the judgments of the Circuit Court of Cook County are affirmed.

Affirmed.

SIMON, P. J., and JIGANTI, J., concur.