THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH ARTALE, Defendant-Appellant.

Second District   No. 2—92—0073

Opinion filed April 20, 1993.

Peter B. Nolte, of Rockford, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, and Penelope Gainer, Assistant Attorney General, of counsel), for the People.

JUSTICE QUETSCH delivered the opinion of the court:

Defendant, Joseph Artale, appeals the circuit court's denial of his motion to vacate his guilty plea, arguing that his plea was involuntary where it was based on his belief that a six- to eight-year sentence of imprisonment would be imposed rather than the 20-year term he received. We affirm.

In March 1990, defendant was charged in a four-count indictment for violating the provisions of the Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56½, pars. 1401(a)(2), 1401(b)(2)). On June 24, 1991, defendant entered an open plea of guilty to count IV of the indictment charging him with knowing possession with intent to deliver more than 15 but less than 100 grams of a substance containing cocaine (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(b)(2)), a Class X felony. In exchange for this partially negotiated plea, the State agreed to dismiss the other three counts and to allow defendant to remain free on bond pending the sentencing hearing. There is no statement on the record at the time of the entry of his plea regarding an agreement to a specific sentence.

At the June 24 hearing, before accepting defendant's guilty plea, the trial court examined the defendant, who stated he was 47 years old and could "read some" but could not write. When asked if he were on medication, drugs or alcohol, defendant stated he was taking some pills. When specifically asked if he understood everything that was going on, defendant replied "Yes." He also stated that he heard the agreement that was presented and that he agreed to it. The court read the charge and stated the possible penalties and fines, including the possibility of an extended sentence of 60 years' imprisonment because of a prior conviction in 1981, to which crime defendant had pleaded guilty. Defendant affirmatively stated he understood the range of penalties.

The court heard the factual basis for the plea. Pursuant to a six-month investigation, Rockford police officers and others executed a search warrant at a residence where defendant was staying. The officers found 84 grams of a substance containing cocaine, a triple-beam scale, baggies, razor blades and grinders. They also found nine packets of cocaine. The State crime laboratory tested the material and conclusively determined the presence of cocaine.

The trial court thoroughly admonished defendant of his rights. Defendant stated that he understood his rights and wished to persist in his plea. He affirmatively acknowledged that he was satisfied with his attorney; that no other promises had been made to him other than

what was stated in open court; that no promises had been broken and no one had forced or threatened him to plead guilty; and that he was pleading guilty of his own free will. The jury waiver was read to him, and he acknowledged in signing it that he was giving up the rights that the trial court had explained to him. Finding that defendant had been advised of his rights, that he understood the consequences of his plea, that it was made voluntarily without any threats or promises other than the plea agreement, and that defendant persisted in his plea, the court accepted defendant's plea and entered a judgment of conviction on the charge.

On October 23, 1991, there was a sentencing hearing in which the State adduced evidence that the street value of the cocaine seized from defendant was $16,000. Defendant testified that he received probation after he was arrested for cocaine delivery. When asked whether he went back to cocaine after so many years, he said he believed he was addicted; however, he had not ever sought any form of treatment.

Defendant said he had been dealing in cocaine for about six months prior to the current arrest. He claimed that he never made a profit from his transactions with his friend, Rose Summers. He testified that his source was a Mexican he met in a bar, but he knew nothing else about him. He paid $1,600 for three ounces of cocaine. When he was asked about the story he told the police about his source of cocaine when he was arrested, he conceded he had not been telling the truth and that the officers laughed. In that version, defendant said he was following a car that was being chased by a police car and the person being chased threw the cocaine out the window and defendant picked it up. Defendant then told the police about an unidentified Mexican he met in a bar who provided him with several ounces of cocaine. Defendant did not receive treatment for drug addiction following his first arrest, but he stopped taking the cocaine in 1981. Defendant then said that he did not have an addiction to cocaine.

On re-cross-examination, defendant stated he used a half-gram of cocaine every two or three days. Defendant said that he used most of the cocaine himself or with friends.

Defendant further testified that he was deaf in the left ear.

Anthony Artale, defendant's younger brother, testified regarding defendant's limited education, his close relationship with his family, his assistance to his mother, and his medical and business problems.

The prosecution argued that defendant was eligible for an extended sentence and that defendant was a drug dealer with a signifi-

cant history of dealing who was also lacking in credibility. In asking for leniency, defense counsel argued in mitigation that defendant was not a violent offender and that he held a job; he was addicted, he had medical problems and limited assets; and he assisted his elderly mother.

The trial court found that defendant sold cocaine for a profit; that the large amount of cocaine indicated he was not only a user but a seller; that defendant had already received lenient treatment; and that a sentence sufficient as a deterrent to others and for the protection of the public was necessary. The court sentenced defendant to 20 years' imprisonment and a street-value fine of $16,000. When defendant was asked if he understood, he said, "No, I don't." The court repeated the sentence and asked defendant to step closer to advise him of his right of appeal and then admonished him of the requisites to exercise that right.

Defendant filed motions to vacate his plea, to reopen his sentencing hearing and to reconsider his sentence; these motions were denied. The present appeal concerns only the denial of his motion to vacate his plea on the ground of involuntariness which plea resulted in the 20-year sentence.

At the hearing on January 7, 1992, defendant's younger brother Anthony testified regarding his dominant role in the legal decision-making in behalf of defendant because defendant was not as astute as he. Anthony testified that he was a longtime friend of Ron White, a deputy State's Attorney in Winnebago County. Anthony believed White was the superior of Assistant State's Attorney Karner, who was prosecuting the case. Anthony said he spoke with White by telephone or in person on numerous unspecified occasions and asked advice concerning his brother. His last conversation was sometime before defendant entered his open plea on June 24, 1991. Anthony stated that defendant was being offered an eight-year term prior to his plea and Anthony sought White's advice. According to Anthony, White said he "would talk to people and he would take care of it and my brother would end up getting six years." No one else was privy to these conversations, except for one which Anthony's sister heard on an extension line. Anthony said that, on the date of the plea, White stated he talked to the judge. Based on his conversation with White, Anthony told his brother not to take the eight-year term because he was only going to receive six years. Anthony did not want defendant's attorney to know about this arrangement and only spoke to his brother. Defense counsel was not informed until after the 20-year sentence was imposed.

Anthony also testified that, between June 20 and June 22, defendant was in the hospital. Defendant was taking medication, including "Halceon [sic]" and codeine. Anthony opined that defendant appeared confused and scared and had a blank look on his face on June 24, the date of the plea. Anthony did not know for certain what medication defendant was taking on June 24.

On cross-examination, Anthony either denied or said he did not remember hearing the trial court's questions of defendant to ascertain whether any other promises had been made to him or had been broken. He did not believe he could inform the court of any other promise that had been made. Anthony admitted that White never spoke to defendant and that he (Anthony) had never informed defense counsel of the agreement for a six-year term. He surmised that White would talk to the defense counsel if he wanted him to know.

When asked if he heard his brother say that he understood the plea proceedings, Anthony replied that he had told his brother to say "yes" because everything was taken care of. Anthony could not say for certain when the six-year agreement was made, but he thought it was in May or June. Anthony admitted that when he talked to White on the day of the plea he did not specifically ask if the six-year offer was still good.

At the conclusion of Anthony's testimony, the court stated on the record that no one in the State's Attorney's office or from the defense ever spoke to the court about the sentence.

Defendant testified regarding his physical condition including deafness in his left ear and diminished capacity in his right ear as well as a prior unspecified heart condition. He could not specify what medication he was taking when he was released from the hospital prior to the date of the plea, but recalled there was codeine in the medication. He said he felt sleepy and had difficulty hearing. On June 24, he understood the State's offer to be an eight-year term in exchange for a guilty plea, but then he stated it was an open plea. He knew his brother was talking to White, and his brother had said everything would be alright. After Anthony talked to White on June 24, defendant believed that the sentence was going to be only six years. Defendant then testified that, if he entered an open plea, he believed he would get either six or eight years. Although the judge told him he could get 60 years, he was under the impression that "everything was all set" and that he would get six years.

On cross-examination, defendant said he did not have trouble hearing the judge ask whether he was under the influence of any medication. He acknowledged that he stated he understood the pro-

ceedings. He heard the State describe the plea agreement to the court. He admitted that he knew he could be sentenced up to 60 years in the penitentiary and that no one made him any promises. However, he said his brother told him he was only going to get six years. He admitted that he answered "no" when the trial court asked him if any promises were made to him, and he did not object that he had a promise made to him other than the one stated in court. White did not directly promise defendant anything.

On redirect examination, when asked if defendant knew what an open plea was, he said, "Not necessarily, no." Defendant further testified that White never spoke directly to him, and he got his information from his brother. When asked specifically why on June 24 he continued to tell the court he understood even if he did not, he said, "I don't know."

The transcript of the earlier proceeding was admitted into evidence. In making its ruling, the court stated it had reexamined the transcript and also recalled defendant's entering his plea. The court stated, "Based upon all of it I agree he made the plea of guilty knowingly and understood everything that was going on." The court further commented: "Court further recalls Mr. Artale standing in front of him and I was able to converse with him. There's no question in my mind that he did understand. Report reflects he did as well. That being the situation, the Motion is denied."

In additional discussions with the court concerning the motion to reconsider sentence (which was denied), defense counsel stated: "I never did put Mr. White on the stand for the reason it was my belief that if he did not come to the courtroom, he was probably not going to be a witness I should present to the Court." Based on what he learned after the sentencing hearing, defense counsel also commented: "[I]t's obvious Ron White would not be a person who would be an appropriate witness for the defense."

Defendant argues that his guilty plea, which resulted in the 20-year sentence, was involuntary where it was based on the belief that the minimum six-year sentence of imprisonment would be imposed. Defendant bases his belief on his limited understanding, his reliance on his brother's advice and direction, and his brother's conversations with Deputy State's Attorney White in which the brother was allegedly assured that a minimum term would be imposed. Defendant maintains that the testimony he presented concerning the purported out-of-court agreement is unrefuted and undiscredited. Based on our careful scrutiny of the record and our application of the appropriate

standards of review in this type of case, we cannot agree with defendant's position.

■ A defendant has no absolute right to withdraw his guilty plea and bears the burden of demonstrating to the trial court the necessity of withdrawing his plea. (*People v. Smithey* (1983), 120 Ill. App. 3d 26, 31.) It is within the sound discretion of the trial court to determine whether a guilty plea may be withdrawn, and, on appeal, this decision will not be disturbed unless it is an abuse of that discretion. *People v. Davis* (1991), 145 Ill. 2d 240, 244.

■ Where it appears that the guilty plea was entered on a misapprehension of the facts or of the law, or in consequence of misrepresentations by counsel or the State's Attorney or someone else in authority, or the case is one where there is doubt of the guilt of the accused, or where the accused has a defense worthy of consideration by a jury, or where the ends of justice will be better served by submitting the case to a jury, the court should permit the withdrawal of the plea of guilty and allow the accused to plead not guilty. *Davis*, 145 Ill. 2d at 244, citing *People v. Morreale* (1952), 412 Ill. 528, 531-32.

In the absence of substantial objective proof showing that a defendant's mistaken impressions were reasonably justified, subjective impressions alone are not sufficient grounds on which to vacate a guilty plea. (*Davis*, 145 Ill. 2d at 244.) Rather, the burden is on the defendant to establish that the circumstances existing at the time of the plea, judged by objective standards, justified the mistaken impression. (*People v. Hale* (1980), 82 Ill. 2d 172, 176.) Additionally, the trial court is not required to believe or accept the defendant's testimony regarding an out-of-court agreement, but may instead regard it as at best improbable and at worst false. (See *People v. Christensen* (1990), 197 Ill. App. 3d 807, 812-13; see also *Davis*, 145 Ill. 2d at 246.) The credibility of the testimony offered by a defendant and the trial court's recollection and observation of the defendant's demeanor may be taken into account in assessing whether the plea was knowing and voluntary. See, *e.g.*, *People v. Moore* (1991), 214 Ill. App. 3d 938, 941.

Where the trial record refutes a defendant's assertions that his plea was not knowingly and voluntarily made, courts may properly dismiss or deny a defendant's petition (*People v. Fern* (1993), 240 Ill. App. 3d 1031, 1041), and a proper and meticulous admonition of the defendant according to Supreme Court Rule 402(b) (134 Ill. R. 402(b)) cannot simply be ignored (*People v. Jones* (1991), 144 Ill. 2d 242, 263; *Fern*, 240 Ill. App. 3d at 1041; *People v. Radunz* (1989), 180 Ill. App. 3d 734, 742; *Smithey*, 120 Ill. App. 3d at 31).

■ Defendant has failed in his burden to show by substantive, objective proof that his subjective impression that he would get the minimum sentence was reasonably justified for several reasons. First, defendant presented testimony that was frequently vague, equivocal, inconsistent, and lacking in credibility. Defendant was represented by counsel whose competence he has not challenged, yet counsel was never informed of any out-of-court offer. Under the facts presented, we find it improbable, as the trial court apparently did, that defendant would have relied exclusively on the legal advice of his brother, a layperson who never communicated the State's alleged out-of-court offer to defendant's counsel and stood mute at the plea proceeding notwithstanding the trial court's meticulous examination and admonishments.

Anthony stated that he had numerous but unspecified and uncorroborated conversations with White concerning the minimum term. Although he claimed White had spoken to the judge, the judge stated on the record no one had ever spoken to him regarding the sentence. Anthony specifically did not ask White on the date of the plea whether the offer was still good. Anthony had selective memory when asked if he heard the admonishments of the trial court regarding any promises made. Anthony said he told defendant to say "yes" when asked if he understood the plea proceeding, yet defendant himself stated that he did not know why he said he understood the proceeding of June 24.

Defendant's own lack of credibility was brought out at the sentencing hearing when he conceded he was less than truthful in telling conflicting and implausible stories regarding his cocaine source. When asked about his understanding of the out-of-court offer, defendant's testimony was unclear regarding whether he would get a six- or an eight-year term, yet he tendered an "open" plea whose meaning he said he did not "necessarily" understand. He acknowledged that White never made an offer directly to him. He conceded that he understood the judge when the judge explained that he could receive up to 60 years' imprisonment. He too failed to object immediately when sentence was pronounced. We cannot say that defendant presented substantial objective proof to support his claim.

Next, the record shows that the trial court meticulously and thoroughly examined and admonished defendant before accepting his plea. Defendant's affirmative acknowledgements in response to the trial court's questions contradict his claim that the plea was not knowing and voluntary. The court observed the demeanor of the defendant, recalled conversing with him, and specifically found that defendant un-

derstood the proceeding and entered his plea knowingly and voluntarily. Rule 402(b) requires that when a guilty plea is entered as a result of a plea agreement, the agreement shall be stated in open court. One major objective of this requirement is to give visibility to the plea agreement process to provide the reviewing court with a record containing an accurate and complete account of all the relevant circumstances surrounding the guilty plea. *Smithey*, 120 Ill. App. 3d at 31-32.

We believe the clear intent of the rule is to avoid precisely the type of problem presented by secretive and questionable out-of-court dealings such as have been alleged in the present case. Although we place little credence in defendant's version of the events leading to the guilty plea, we find it very disturbing that the State did not call Deputy State's Attorney White to refute defendant's allegations.

Trust in one's attorney is of the utmost importance, and a defendant's failure to confide in his attorney and his failure to heed the specific admonishments of the court cannot be condoned. (*Radunz*, 180 Ill. App. 3d at 742.) The admonishments of the court cannot be considered a meaningless ritual. (*Fern*, 240 Ill. App. 3d at 1042.) It appears that brother Anthony's advice was not any better than defense counsel's and could have resulted in defendant's unjustified, subjective and mistaken impression that he would receive the minimum sentence. We do not view defendant's brother as a person on whose authority defendant should have justifiably relied. Defendant's evidence was insufficient to show that he himself was so lacking in competence that his plea was involuntary. We also note that even a guilty plea made in reliance on the incorrect advice of counsel as to the anticipated term of a sentence would nevertheless be a voluntary plea. (*Radunz*, 180 Ill. App. 3d at 742.) Certainly, the rule applies to the incorrect advice of a layperson.

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in denying defendant's motion to vacate his guilty plea. The conviction and sentence are affirmed.

Affirmed.

INGLIS, P.J., and McLAREN, J., concur.