NO. 4-95-0816

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from

Plaintiff-Appellee, )  Circuit Court of

v. )  Macon County

TRENT L. CHAPPLE, )  No. 95CF24

Defendant-Appellant. )

)  Honorable

)  James A. Hendrian,

)  Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

In January 1995, defendant Trent Chapple was charged with un­law­ful pos­session of more than 15 but less than 100 grams of a sub­stance con­taining co­caine with the in­tent to deliv­er, a Class X felo­ny (720 ILCS 570/401(a)(2)(A) (West 1994)), and the in­clud­ed of­fense of un­law­ful pos­ses­sion of a con­trolled sub­stance, a Class 1 felo­ny (720 ILCS 570/402(a) (West 1994)).  Defendant was represented by private counsel and pleaded not guilty.  At a pretrial hearing in May 1995, after being fully admonished by the court, defendant waived his right to a jury trial.  725 ILCS 5/103-6 (West 1994).  In July 1995, howev­er, defendant filed a motion to withdraw his jury waiver.  Fol­lowing argument by counsel, the trial court denied defendant's motion.  The court con­ducted a bench trial in August 1995 and found de­fendant guilty of both offens­es.  In September 1995, the trial court va­cated the judg­ment on pos­ses­sion and sen­tenced de­fen­dant to 15 years in prison on the convic­tion of pos­ses­sion with the intent to de­liv­er.  Defen­dant ap­peals, asserting (1) the trial 

court abused its discretion in denying his motion to withdraw jury waiver; (2) he was not proved guilty beyond a reasonable doubt of possession of cocaine with intent to deliver; (3) he was denied effective assistance of counsel; and (4) the trial court abused its discretion in sen­tencing by failing to consider the relative seriousness of the offense.  We affirm.

I.  WITHDRAWAL OF JURY WAIVER

Defendant contends the trial court abused its dis­cre­tion in deny­ing his mo­tion to withdraw the jury waiver.  With­drawal of a jury waiver is not a matter of right.  
People v. Closson
, 13 Ill. App. 3d 878, 880, 301 N.E.2d 347, 348 (1973).  Rather, wheth­er a jury waiv­er, once know­ingly and in­tel­li­gent­ly made, may be with­drawn is a matter within the dis­cre­tion of the trial court, unless the circum­stances indi­cate the defen­dant was un­aware of the con­se­quences of the waiver.  
Peo­ple v. Hall
, 114 Ill. 2d 376, 414, 499 N.E.2d 1335, 1351 (1986).  

Defendant's mo­tion stat­ed "the rea­son for the waiv­er of jury trial was to avoid undue pros­ecu­tion of
 [defendant's] wife and that is no lon­ger possi­ble."  In his brief, defendant repre­sents he negotiated a plea agreement through his attorney where­by, in re­turn for defendant's jury waiver and a plea of guilty, the State would not prose­cute his wife in an unrelated matter.  At the motion hear­ing, defense coun­sel indi­cat­ed pros­ecu­tion of defendant's wife was no lon­ger fea­sible and, due to this changed cir­cum­stance, defen­dant wished to rein­state his right to a jury trial. 

In denying defendant's motion, the court noted when de­fen­dant waived his right to a jury tri­al, it was knowing and volun­tary, the al­leged plea agree­ment was not men­tioned and de­fen­dant gave no indication the waiv­er was con­di­tion­al.  Nothing in the record suggests defendant was un­aware of the con­sequences of his jury waiver and he does not argue as much.

A change in cir­cum­stanc­es can some­times enti­tle a de­fen­dant to withdraw a jury waiver.  The circum­stanc­es here did not re­quire such a result.  In 
People v. Smith
, 11 Ill. App. 3d 423, 296 N.E.2d 628 (1973), the third district held the trial court com­mitted re­vers­ible error in denying the defendant's mo­tion to withdraw his jury waiver where the State was permitted to amend the charg­ing in­strument after the waiver.  There, defense counsel apparently believed the original charge was technically deficient and the case would involve a purely legal question.  The 
ap­pel­late court found the situ­a­tion should have caused the trial court to ques­tion whether, in view of the amend­ment, the defendant's jury waiv­er was un­der­stand­ing­ly made.  The appel­late court con­clud­ed the waiv­er may not have been in­tended to be made with respect to the charge as amended, but solely to the charge as originally filed.  
Smith
, 11 Ill. App. 3d at 425, 296 N.E.2d at 630.

 In 
Peo­ple v. Holmes
, 88 Ill. App. 3d 140, 410 N.E.2d 381 (1980), the de­fen­dant sought to withdraw his jury waiver when the State was al­lowed to amend its an­swer to his dis­cov­ery motion to include newly dis­cov­ered evi­dence, dam­ag­ing to the defendant's case, after the bench tri­al had al­ready begun.  The de­fen­dant argued he would not have waived a jury trial had he known the evidence would be admitted at trial.  Finding the new evi­dence was not "substan­tively 'damaging'" but only impeaching, however, the first district con­cluded the de­fen­dant failed to dem­on­strate the prejudice neces­sary to in­vali­date his know­ing and intelli­gent jury waiv­er. 
 
Holmes
, 88 Ill. App. 3d at 143, 410 N.E.2d at 384; but see 
Peo­ple v. Norris
, 62 Ill. App. 3d 228, 379 N.E.2d 80 (1978) (admission of damaging, newly dis­cov­ered sub­stan­tive evi­dence resulted in mis­tri­al).  Unlike these cases, defendant's abil­i­ty to de­fend him­self against the charg­es here was not im­paired by the changed cir­cumstanc­e, 
i.e.
, the State's inability to prosecute his wife in a separate matter.

The present situation is analogous to a case where a de­fendant wishes to withdraw a guilty plea.  A de­fen­dant has no abso­lute right to with­draw a plea of guilty and bears the burden of demon­strat­ing to the trial court the necessi­ty of with­drawing the plea.  
People v. Artale
, 244 Ill. App. 3d 469, 475, 612 N.E.2d 910, 915 (1993)
; see 
Peo­ple v. Da­vis
, 145 Ill. 2d 240, 244, 582 N.E.2d 714, 716 (1991).  When it ap­pears a plea of guilty was entered on the misap­prehen­sion of fact or law, or as a conse­quence of misrepre­senta­tions by coun­sel, the State's At­tor­ney, or some­one else in au­thority, the court should per­mit the with­draw­al of a guilty plea.  
Artale
, 244 Ill. App. 3d at 475, 612 N.E.2d at 915; see also 
Peo­ple v. Sta­ple
, 233 Ill. App. 3d 8, 10, 598 N.E.2d 384, 386 (1992).  

Here, defendant does not allege he was under a misap­pre­hen­sion of fact or law when he made his jury waiver.  He does not allege the State's Attorney made any misrep­re­sen­ta­tions to him or breached the proposed plea agreement.  Nor does he allege his jury waiver was involuntarily made.  Defendant's only con­ten­tion at the mo­tion hear­ing was his in­cen­tive for waiv­ing a jury trial no longer existed and, there­fore, he wished to with­draw the waiv­er.  Under these cir­cum­stanc­es, we con­clude the trial court did not abuse its discre­tion in deny­ing defendant's motion to with­draw his jury waiver.

II.  SUFFICIENCY OF THE EVIDENCE 

Next, defendant argues his conviction was errone­ous because, even viewing the evidence in the light most favor­able to the prosecution, no ra­tio­nal trier of fact could have found him guilty beyond a rea­sonable doubt of possession of cocaine with the intent to deliver.  See 
Peo­ple v. Lew­is
, 165 Ill. 2d 305, 336, 651 N.E.2d 72, 87 (1995).  To convict on a charge of posses­sion of a con­trolled sub­stance with the intent to deliver, the State must prove (1) the de­fen­dant had knowledge of the pres­ence of a con­trolled sub­stance, (2) the con­trolled substance was in his imme­diate control or posses­sion, and (3) he in­tend­ed to de­liv­er the con­trolled substance.  
Peo­ple v. Rob­in­son
, 167 Ill. 2d 397, 407, 657 N.E.2d 1020, 1026 (1995); 
Peo­ple v. Newman
, 211 Ill. App. 3d 1087, 1093, 569 N.E.2d 1089, 1092-93 (1991).

At defendant's trial, six law enforcement officers tes­ti­fied as fol­lows.  On January 6, 1995, approxi­mate­ly eight offi­cers exe­cut­ed a search warrant, ob­tained after a con­trolled pur­chase of narcotics was made at the home of Dhrumba Smith, for Smith's resi­dence.  While the offi­cers were in­side the resi­dence conduct­ing the search, defen­dant knocked on the front door.  A uniformed officer opened the door and asked defen­dant to step in.  Upon see­ing the offi­cers, de­fen­dant ex­claimed "[o]h shit!" and turned to leave.  Officer David McLearin said "[s]top! We want to talk to you."  When de­fen­dant attempted to leave, McLearin grabbed him by the arm, but de­fen­dant spun out of his coat and ran.  Three to four offi­cers began chas­ing de­fen­dant.  Upon exit­ing the resi­dence, offi­cers ob­served an unoc­cu­pied car with its motor run­ning parked di­rect­ly in front of the resi­dence.  The offi­cers later dis­cov­ered this was the car defen­dant had driven to the scene.

As they chased defendant, McLearin and depu­ty sher­iff Craig Gessford ob­served de­fen­dant throw something up in the air. McLearin shout­ed to the other officers "[h]e threw some­thing," terminated his pursuit of defendant, and went to the area where he saw the ob­ject thrown.  McLearin re­trieved a plas­tic bag con­tain­ing what ap­peared to be four to six rocks of crack co­caine.  McLearin testified the rocks were much larg­er than the typi­cal rocks of crack co­caine sold as indi­vidual doses.  McLearin stat­ed individual doses weigh ap­prox­imately 0.1 grams.  He esti­mated 
each
 
rock
 
re­covered
 from defen­dant weighed ap­prox­i­mate­ly 6 grams.

The pur­suit of de­fen­dant ended when he ran into a resi­dence sev­eral blocks away where police ap­prehend­ed him.  Occu­pants of the resi­dence testi­fied they did not know defendant and he ran into the house unin­vited.  The offi­cers who ap­pre­hend­ed de­fen­dant brought him back to Smith's residence, pat­ted him down and re­covered over $500 from his pants pocket.

McLearin testified he turned over the bag defendant had thrown away to Inspector John Szajko.  Szajko estimated there were ap­prox­i­mate­ly 28 grams of a sub­stance re­sem­bling crack co­caine loose in the plastic bag McLearin gave him.  Szajko per­formed a field analysis of the substance in the bag and it test­ed posi­tive for the pres­ence of cocaine.  Szajko tes­ti­fied he then placed the plas­tic bag and its con­tents into an evi­dence bag, which he sealed and, later the same day, locked in the task force evi­dence vault.   

Jerry Wag­on­er, a Decatur po­lice offi­cer, tes­ti­fied he re­moved the evi­dence bag from the task force evi­dence vault on January 10, 1995, and delivered it to the Illi­nois State Po­lice labo­ra­tory for testing.  Michael Cravens, a forensic sci­en­tist with the Illinois State Police Bureau of Fo­rensic Sci­ence, testi­fied Wag­oner deliv­ered the evi­dence bag to him on Janu­ary 10, 1995.  Cravens testified the evi­dence he received con­sist­ed of an outer plastic bag with 11 small­er plastic pack­ets in­side, each con­tain­ing a white chunky materi­al.  Cravens stated he sepa­rated the sub­stance con­tained in each pack­et from its packaging and tested portions of the sub­stance taken from each packet.  These sub­stances tested positive for the pres­ence of co­caine.  Cravens testified the total weight of the sub­stances recovered was 26.5 grams.  When he fin­ished his tests, Cravens placed the rocks of cocaine back into the plastic bag loose, along with the 11 empty pack­ets.  At trial, McLearin, Szajko, Wagoner and Cravens identi­fied State's ex­hib­it No. 1 as the evidence McLearin recov­ered from defen­dant on Janu­ary 6, 1995.

Defendant testified on his own behalf.  He denied pos­sessing cocaine on the date in question and alleged he ran from the officers because he was unaware they were police and was frightened by their presence in his friend's house.

At the conclusion of the trial, the court found defen­dant guilty.  The court stat­ed it con­sid­ered defendant's flight from the offi­cers, the amount of money on his person at the time of his ar­rest, and the size, amount, and pack­aging of the cocaine rocks found in his pos­ses­sion as indica­tions of his intent to deliver the controlled substance.  Defen­dant contends the evi­dence was insuf­fi­cient to prove he possessed cocaine with the intent to deliver.  Specifi­cally, he argues (1) his flight was not evi­dence of an in­tent to de­liv­er, (2) he pro­vided the court with an explana­tion of why he had a large amount of money on him at the time of his arrest, and (3) the physical evidence present­ed was unreli­able and the amount and pack­ag­ing of the sub­stance al­leg­edly re­cov­ered on Janu­ary 6, 1995, were not in­dic­a­tive of an in­tent to de­liv­er.

Because direct evidence of intent to deliver is rare, it must usually be proved by cir­cum­stan­tial evi­dence.  
Rob­in­son
, 167 Ill. 2d at 408, 657 N.E.2d at 1026.  Illi­nois courts con­sider several factors pro­bative.  In 
Rob­in­son
, the su­preme court noted the quantity of a controlled sub­stance 
alone
 can be suf­ficient evi­dence to prove an intent to deliver beyond a reason­able doubt.  
Rob­in­son
, 167 Ill. 2d at 410-11, 657 N.E.2d at 1028.  A rea­son­able in­fer­ence of in­tent to de­liv­er aris­es where the amount of nar­cot­ics pos­sessed is too large to be viewed as being for per­sonal use.  
Robinson
, 167 Ill. 2d at 408, 657 N.E.2d at 1026; 
People v. Beverly
, 278 Ill. App. 3d 794, 799, 663 N.E.2d 1061, 1065 (1996); 
People v. Thom­as
, 261 Ill. App. 3d 366, 369, 633 N.E.2d 839, 841 (1994).  At defendant's trial, there was expert tes­ti­mo­ny indi­cat­ing the amount of cocaine was more than would reason­ably be used for personal consump­tion.

Officer Edward Root of the Decatur police de­part­ment, qualified be­fore the court as an ex­pert in the area of nar­cotics traffick­ing and sales, testified in his opin­ion the amount of drugs re­cov­ered from defen­dant could not rea­sonably be consid­ered to have been for per­sonal use.  Root ex­plained the typi­cal weight of an indi­vidual dose of crack co­caine is approx­i­mately 0.2 grams.  He stated such a rock of co­caine would be the size of a pea or ker­nel of corn and noted the sev­eral rocks recov­ered here were much larg­er.  Based on Root's tes­timo­ny, 26 grams would be the equiva­lent of 130 indi­vidu­al doses of crack co­caine.  McLearin tes­ti­fied in his expe­ri­ence an indi­vidu­al dose of crack cocaine weighs approx­i­mate­ly 0.1 grams.  Thus, the court could reasonably have con­clud­ed the amount of the sub­stance rep­re­sent­ed between 130 and 260 individ­ual doses of crack co­caine.  

Root would infer de­fen­dant in­tend­ed to de­liver the drugs based solely on the quantity in his pos­ses­sion.  Root ex­plained drug 
users
, as opposed to 
dealers
, do not typi­cal­ly hold large amounts of drugs because of their high cost and the greater po­ten­tial penalties associated with posses­sion of large quan­ti­ties.  In Root's experience, having questioned hun­dreds of drug users and dealers, he had never interviewed 
anyone
 who pos­sessed the amount of cocaine found on de­fen­dant for per­sonal use.

On cross-examination Root stated such an amount of cocaine could 
pos­si­bly
 be for per­sonal use.  On redi­rect he opined that proba­bility was very small.  We ac­knowl­edge when the amount of a seized sub­stance 
may
 be con­sid­ered con­sis­tent with personal use, additional evi­dence of intent to de­liver is re­quired.  
Rob­in­son
, 167 Ill. 2d at 411, 657 N.E.2d at 1028.  Such addi­tional evi­dence was pres­ent here.   

Defendant encountered the officers in a house known by po­lice to be a site for drug traf­fick­ing.  Shortly be­fore de­fen­dant ar­rived at the Smith resi­dence, the police appre­hend­ed and arrested an­oth­er person who left the residence and pos­sessed what appeared to be crack co­caine.  Po­lice also ar­rest­ed a person in­side the resi­dence who was in possession of drug-dealing para­phernalia and a substance resembling crack co­caine.  

Further, defendant's own actions sup­port the court's finding of an in­tent to de­liv­er.  When defen­dant got out of his car and approached Smith's resi­dence, he left the motor of his car running.  This suggests defendant like­ly in­tend­ed to quickly pick up or drop off some­thing or some­one.  Upon see­ing uni­formed offi­cers in­side Smith's house, he ex­claimed "[o]h shit" and ran so hur­riedly he ran out of his jack­et and one shoe.  This permits the inference of a con­scious­ness of guilt.

Other fac­tors sup­portive of an in­fer­ence of in­tent to de­liver are the manner in which the drugs are pack­aged and the pos­ses­sion of a large amount of cash.  See 
Robin­son
, 167 Ill. 2d at 408, 657 N.E.2d at 1028; 
People v. Jones
, 215 Ill. App. 3d 652, 655-56, 575 N.E.2d 561, 563 (1991).  Here, defendant had a signifi­cant amount of money at the time of his arrest.  Al­though defen­dant testified the money was for the pur­chase of re­mod­el­ing sup­plies, the trial court was in the best posi­tion to as­sess the plau­si­bility of defendant's expla­na­tion and was enti­tled to dis­be­lieve it.  
Peo­ple v. Young
, 269 Ill. App. 3d 120, 123, 645 N.E.2d 533, 535 (1994).  The court specifi­cally stated it did not be­lieve defen­dant and re­marked upon his "in­cred­ible" tes­timo­ny.

Officer Root stated it was his opinion, based on the amount of drugs re­cov­ered, the amount of money found in defendant's posses­sion, and defen­dant's arrival at a house known for drug traf­ficking, the drugs found in defendant's pos­ses­sion were intended for de­livery.  To affirm defendant's con­vic­tion based on these factors is con­sis­tent with 
Robinson
, 
Beverly
, and nu­mer­ous other appel­late deci­sions.  See, 
e.g.
, 
People v. Nixon
, 278 Ill. App. 3d 453, 663 N.E.2d 66 (1996); 
Peo­ple v. Green­leaf
, 254 Ill. App. 3d 585, 627 N.E.2d 111 (1993); 
Peo­ple v. Ber­ry
, 198 Ill. App. 3d 24, 555 N.E.2d 434 (1990).

Defendant contends in finding the intent to de­liv­er, the trial court relied heavily on the manner in which the drugs were pack­aged.  Yet, he argues, in­con­sis­ten­cies be­tween McLearin's and Cravens' de­scriptions of the sub­stance and the way it was packaged created a rea­son­able doubt of his in­tent to de­liv­er.  Defen­dant implies McLearin's description of the amount and pack­ag­ing of the sub­stance recov­ered does not dem­on­strate an in­tent to de­liv­er, where­as Cravens' de­scrip­tion might.  Defen­dant also argues the inconsistent descriptions sug­gest pos­si­ble tam­pering with the substance by police.

At trial, McLearin stated he recovered approximately four to six rocks of what appeared to be crack cocaine, pack­aged loose­ly in an untied plastic bag.  As stated, McLearin estimated each rock weighed approximately 6 grams, indicating a total weight of 24 to 36 grams.  When McLearin was shown the State's ex­hibit pur­ported to be the sub­stance re­cov­ered from defendant on Janu­ary 6, 1995, he stated it ap­peared to be the same type of materi­al de­fendant threw, with the same type of packaging, but ob­served the sub­stance was "mashed up now in a lot more small 
piec­es."  McLearin tes­tified he him­self did not pack­age the ex­hibit into evidence but handed it over to Szajko.  When asked to de­scribe in more de­tail the pack­et he re­cov­ered and its con­tents, McLearin stated "I didn't real­ly exam­ine [it] that much."  Cra­vens de­scribed the evi­dence he exam­ined as a plas­tic bag con­tain­ing 11 smaller plastic pack­ets of crack co­caine.  He stated the cocaine rocks, exclusive of their packaging, weighed 26.5 grams in to­tal.  McLearin, Szajko, and Wagoner each tes­ti­fied nei­ther they nor any­one else al­tered or tampered with the sus­pected nar­cot­ics while the evi­dence was in their cus­tody or con­trol. 

We note McLearin's estimate of the total weight of the substance recovered, given before he was shown State's exhibit No. 1, was very close to the actu­al weight of the sub­stance, as de­ter­mined by Cravens in the labo­ra­tory.  The dis­agreement in tes­timo­ny was as to the num­ber of rocks in the plas­tic bag and whether they were wrapped indi­vidu­ally.  

 While the trial court may have considered the packag­ing of the cocaine an im­por­tant factor, in light of the other evidence pre­sent­ed, it is not as critical a fac­tor as defen­dant sug­gests.  Despite some inconsis­tencies in the descrip­tions of the pack­ag­ing, the quantity of the sub­stance alone, as to which the wit­nesses were in substantial agreement, was a significant factor evidencing the in­tent to de­liv­er. 

In 
People v. Munoz
, 103 Ill. App. 3d 1080, 1082, 432 N.E.2d 370, 372 (1982), the appellate court affirmed the defendant's convic­tion for possession with the intent to deliver cocaine, acknowl­edging the only evidence of the in­tent to de­liver was the amount of drugs recovered (250.1 grams co­caine).  Al­though the amount of cocaine recovered here was sub­stantially less than in 
Munoz
, Root's testimony show­ed it was an amount far great­er than could 
reasonably
 be con­sid­ered consis­tent with per­sonal use, regardless of its pack­ag­ing.  Also, the court could have found McLearin's dis­claim­er, stating he did not real­ly exam­ine the con­tents of the bag when he recov­ered it, suf­fi­cient to ex­plain the in­con­sis­ten­cies in the witnesses' testimo­ny.  Fi­nal­ly, the court could have found the well-docu­ment­ed chain of cus­tody and the witnesses' in-court iden­ti­fi­ca­tions of the evi­dence per­sua­sive as to the reli­ability of the evidence.     

A criminal con­vic­tion will not be set aside un­less the evi­dence is so im­prob­able or unsatisfactory it cre­ates a rea­son­able doubt as to the defendant's guilt.  
Peo­ple v. Col­lins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985); 
Beverly
, 278 Ill. App. 3d at 798, 663 N.E.2d at 1064.  Given the to­tali­ty of the evidence pre­sent­ed, a ratio­nal trier of fact could have con­clud­ed, beyond a reasonable doubt, defendant possessed and intended to de­liv­er approximately 26 grams of a substance containing co­caine on the date of his arrest.

III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends he was denied the effective assis­tance of trial counsel, guaranteed by the federal and state con­sti­tu­tions, setting forth three arguments in support of this con­ten­tion.  U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8.  

The Supreme Court of Illinois in 
People v. Albanese
, 125 Ill. 2d 100, 531 N.E.2d 17 (1988), adopted the standard enun­ciated in 
Strickland v. Wash­ington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), for determining whether a crimi­nal defendant was denied effective assistance of counsel under the state and federal constitu­tions.  To succeed on a claim of inef­fective assistance of coun­sel, a defendant must show (1) his counsel's representation fell below an objective standard of reasonableness, making the trial results unreli­able, and (2) he was preju­diced by counsel's unpro­fessional conduct, 
i.e.
, he must show but for the attorney's unprofessional errors, the re­sults of the trial would have been different.  
Albanese
, 125 Ill. 2d at 106, 531 N.E.2d at 19.  To 
estab­lish prej­u­dice due to counsel's unprofessional rep­re­senta­tion, a de­fendant bears the burden of proving "the factfinder would have had a reason­able doubt re­specting guilt" 
if not for counsel's errors.  
Strickland
, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.  When the evi­dence is not close­ly bal­anced and the evi­dence of the defendant's guilt is over­whelm­ing, the court may find there is no rea­son­able probability the outcome of the trial or of a new trial would have been dif­ferent had trial coun­sel pursued the course sug­gested by the defendant in his ap­peal.  See 
Peo­ple v. Chatman
, 276 Ill. App. 3d 619, 622-23, 659 N.E.2d 44, 46 (1995).

First, defendant claims his trial counsel's failure to request a substitution of judge following the court's denial of his motion to withdraw the jury waiver denied him the opportunity to have a fair and impartial trial.  A defendant has the bur­den of showing preju­dice on the part of the judge in order to dis­qual­ify the judge from sitting in a case.  
Peo­ple v. Wright
, 234 Ill. App. 3d 880, 897, 601 N.E.2d 817, 830 (1992)
.  Ab­sent a showing of ani­mosi­ty, ill will, or dis­trust toward a de­fendant, a judge will not be dis­qualified for cause.  
People v. Walsh
, 273 Ill. App. 3d 453, 456-57, 652 N.E.2d 1102, 1105 (1995); see also 
Peo­ple v. Damnitz
, 269 Ill. App. 3d 51, 55, 645 N.E.2d 465, 468-69 (1994).

Defendant contends the trial judge was initially led to anticipate defendant would enter a guilty plea and im­plies the judge became biased against him when he did not do so.  This bias, de­fen­dant con­tends, pre­clud­ed him from re­ceiv­ing an impar­tial trial and was a cir­cum­stance his trial coun­sel should have pro­tect­ed him from by filing a motion for substi­tution of judge.

There is no support in the record for defendant's bare as­ser­tion the trial judge "would be clear­ly biased against him in view of the fact that a guilty plea seemed immi­nent but was aborted at the last minute."  The trial court de­nied defendant's motion to withdraw his jury waiver based on its pre­vious finding the waiver was know­ing and vol­un­tary.  The trial judge did not par­tic­i­pate in or learn the de­tails of any plea negotiations between defendant and the State and there was no dis­cus­sion of the plea terms until the hear­ing on defendant's mo­tion to with­draw his jury waiv­er.  In 
People v. Fitzgerald
, 55 Ill. App. 3d 626, 632, 370 N.E.2d 1207, 1212 (1977), the court indi­cated a judge who has heard an accused with­draw a previous offer to plead guilty is not required to recuse him­self in the bench trial of the accused where the judge did not partic­i­pate in plea dis­cus­sions and did not concur in the terms of the plea agreement sup­posedly reached.

Defendant has presented no evidence indicating the trial judge was biased against him.  There­fore, we can­not con­clude de­fen­dant would have suc­ceed­ed on a pre­tri­al mo­tion for sub­sti­tu­tion of judge if one had been filed.  See 
Fitz­gerald
, 55 Ill. App. 3d at 632, 370 N.E.2d at 1212; 
Peo­ple v. Har­ris
, 220 Ill. App. 3d 848, 858-59, 580 N.E.2d 1342, 1349 (1991).  More­over, de­fen­dant has not es­tab­lished the out­come of the trial would have been differ­ent had a new judge been as­signed the case.  We find defendant's claim of inef­fec­tive as­sis­tance of coun­sel, based on his attorney's fail­ure to file a mo­tion for substi­tution of judg­e, to be without merit.

Next, defendant claims his trial counsel's failure to highlight in closing argument contradictions in the tes­ti­mo­ny of the State's wit­ness­es denied him the effective as­sistance of counsel.  De­fen­dant ar­gues the inconsistent de­scrip­tions given by the State's witnesses of the drugs he allegedly pos­sessed, dis­cussed above, suggested there had been tam­per­ing with the evi­dence by po­lice or police in­compe­tence in han­dling the evi­dence, and these possi­bil­ities should have been high­light­ed in clos­ing argu­ment by defense coun­sel.  Defendant suggests his trial counsel's failure to point out the incon­sis­ten­cies fell below an ob­jec­tive stan­dard of reasonable­ness be­cause a critical factor in the pros­ecu­tion of possession with the in­tent to de­liv­er is the type of pack­aging and quantity of the substance in­volved.  He asserts the trial court relied heavily on Cravens' testimony re­garding the packaging of the cocaine and argues but for his trial counsel's failure to emphasize the in­con­sis­tent descrip­tions of this evi­dence, the re­sult of the trial would have been dif­fer­ent.

In examining counsel's performance, a reviewing court shall not extend its inquiry into areas involving the exer­cise of judgment, discretion, trial tactics or strategy.  
Peo­ple v. Gon­zalez
, 238 Ill. App. 3d 303, 331-32, 606 N.E.2d 304, 324 (1992).  Defense counsel repeatedly asked McLearin wheth­er he or other officers attempted to preserve any finger­print evi­dence on the plastic bag recov­ered.  In this way, counsel brought to the court's attention the pos­sibili­ty the physical evidence presented was never actu­al­ly in defendant's pos­ses­sion.  De­fense coun­sel asked the witnesses nu­mer­ous, spe­cif­ic ques­tions regard­ing the pack­ag­ing and amount of the sub­stance recov­ered.  The court heard any dis­crep­an­cies in wit­ness tes­timo­ny and was in a posi­tion to draw reason­able in­ferenc­es from any con­flicts in the evi­dence.  De­fen­dant was not de­nied the ef­fec­tive as­sis­tance of coun­sel merely be­cause he dis­agrees with the trial tac­tics em­ployed by his at­tor­ney.

Finally, defendant alleges trial counsel's failure to file a motion for a new trial denied him ef­fec­tive as­sis­tance of counsel.  To succeed on this claim, defendant must establish there was a reasonable probability a new trial would have been granted had counsel filed such a motion.  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; see 
Chatman
, 276 Ill. App. 3d at 622, 659 N.E.2d at 46.  Defendant con­tends he would have prevailed on such a motion if it (1) attacked the denial of his motion to withdraw the jury waiver and (2) argued the evidence was insufficient to prove him guilty beyond a rea­sonable doubt.  Based on our resolution of those issues, we dis­agree.

When there are no sub­stan­tial grounds for a new tri­al, a fail­ure to move for one does not demon­strate incom­pe­tency.  
Gon­za­lez
, 238 Ill. App. 3d at 331, 606 N.E.2d at 323; 
Peo­ple v. Purnell
, 126 Ill. App. 3d 608, 624, 467 N.E.2d 1160, 1172 (1984).  Nothing in the re­cord sug­gests a defense mo­tion for a new trial would have been successful.  Ac­cord­ing­ly, de­fen­dant has not met the sec­ond prong of 
Strickland
 and we reject this last claim of inef­fec­tive as­sis­tance of coun­sel.

IV.  SENTENCE IMPOSED

Finally, defen­dant argues the 15-year sen­tence imposed by the court was exces­sive in light of the seri­ous­ness of the of­fense committed.  Ab­sent an abuse of discre­tion, the sen­tence imposed by the trial court may not be altered upon review.  
Peo­ple v. Perruquet
, 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883 (1977).  The court found defendant possessed 26.1 grams of a sub­stance con­tain­ing cocaine with the intent to deliv­er it.  The possession of between 15 and 100 grams of co­caine with the intent to deliver is punish­able by a term of im­prison­ment "not less than 6 years and not more than 30 years."  720 ILCS 570/401(a)(2)(A) (West 1994).  

Defen­dant argues the 26.1 grams he allegedly possessed was only "'slightly in ex­cess of the minimum required to make the offense a Class X felony,'" quoting 
People v. Evans
, 143 Ill. App. 3d 236, 242, 492 N.E.2d 1036, 1041 (1986), and con­cludes his sen­tence was ex­ces­sive.  Defen­dant requests reduction in his sen­tence pursuant to Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)) or, alternatively, remand for resentencing.

While the amount of the controlled substance possessed by a de­fendant is rele­vant to the seriousness of the offense, this was not the only factor considered by the trial court in sentencing defen­dant.  The court indicated it con­sid­ered the fol­low­ing fac­tors:  defendant's sub­stan­tial traf­fic re­cord, his prior convic­tions for pos­ses­sion of can­nabis, his "in­credi­ble" testi­mony at trial, his "total lack of sin­ceri­ty," and his "con­tinued pro­testa­tions of inno­cence."  The court concluded defen­dant was "not a good risk of rehabilita­tion" and sentenced him to 15 years in prison, a period well with­in the statuto­ry guide­lines.

Sections 5-5-3.1 and 5-5-3.2 of the Unified Code of Corrections (Code) set forth factors to which the court may ac­cord weight in determining an appropriate sentence.  730 ILCS 5/5-5-3.1, 5-5-3.2 (West 1994).  The court may opt to mini­mize a sen­tence when the char­acter and attitude of the defen­dant indi­cate he is un­likely to com­mit another crime.  730 ILCS 5/5-5-3.1(a)(9) (West 1994).  The sen­tenc­ing court may choose not to minimize a sen­tence when, as the court found here, there is a distinct ab­sence of miti­gat­ing fac­tors.  730 ILCS 5/5-8-1(b) (West 1994).  Here, the court gave weight to defendant's his­to­ry of crim­i­nal activity, including prior convictions for pos­ses­sion of can­nabis, which is a proper basis for imposing a more se­vere sen­tence under section 5-8-1(b) of the Code.  730 ILCS 5/5-5-3.2(a)(3) (West 1994).  Defendant presented no evidence in miti­gation of his crime.  Given the rele­vant ag­gra­vat­ing and lack of miti­gat­ing fac­tors be­fore it, we con­clude the trial court did not abuse its dis­cre­tion in sen­tenc­ing defen­dant to 15 years in pris­on.

V.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

STEIGMANN, P.J., and McCULLOUGH, J., concur.